# RINALDI *v.* UNITED STATES

No. 76–6194.  Decided November 7, 1977

PER CURIAM.

Petitioner's participation in a plot to rob safe-deposit boxes of the Doral Beach Hotel in Miami Beach, Fla., violated the laws of both the State of Florida and the United States. He has been tried, convicted, and sentenced to imprisonment by both sovereigns. He claims that his federal conviction was obtained in violation of established federal policy against multiple prosecutions for the same offense and, for that reason, should be set aside. The Solicitor General agrees and submits that the Court should summarily "vacate the judgment of the court of appeals and remand the case to the district court with instructions to dismiss the indictment." [1] Based on our independent evaluation of the unusual circumstances disclosed by this record, we conclude that such summary disposition is appropriate.

In February 1973, petitioner was charged with state offenses arising out of the Doral Beach Hotel robbery.[2] In March 1973, an indictment was returned in the United States District Court for the Southern District of Florida, charging him with conspiracy to affect interstate commerce by robbery in violation of the Hobbs Act, 18 U. S. C. § 1951.[3] In May, petitioner was convicted of the state charges in the Dade County Circuit Court and sentenced to six years' imprisonment.[4] A subse-

---

[1] Memorandum for United States 9.

[2] The state offenses were conspiracy to commit robbery, conspiracy to commit grand larceny, and carrying a concealed weapon.

[3] Section 1951 provides in part:

"(a) Whoever in any way or degree . . . affects commerce . . . by robbery . . . or conspires so to do . . . shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

[4] He was sentenced to concurrent terms of five years' imprisonment on the conspiracy to commit robbery and grand larceny counts and a consecutive term of one year's imprisonment on the weapons count. On the State's confession of error, petitioner's conviction of conspiracy to commit grand larceny was reversed on appeal. His convictions on the other two counts were affirmed. See *Scaldeferri* v. *State*, 294 So. 2d 407 (Fla.

quent federal trial ended in a mistrial. Thereafter, the District Court questioned Government counsel regarding the need for another trial in view of petitioner's state convictions. Government counsel responded that he had been instructed by his superiors at the Department of Justice to pursue the federal prosecution vigorously because of their concern that the state convictions might be reversed on appeal. After a second jury trial, petitioner was convicted on the Hobbs Act charge; the District Court imposed a 12-year sentence to run concurrently with the state sentence.

On appeal to the United States Court of Appeals for the Fifth Circuit, petitioner argued that his conviction had been obtained in violation of a longstanding federal policy against multiple prosecutions for the same act. See *Petite* v. *United States,* 361 U. S. 529, 530 (1960).[5] The Government acknowledged that its *Petite* policy had been violated and moved the

App.), cert. denied *sub nom. Pompeo* v. *State,* 303 So. 2d 21 (Fla.), cert. denied *sub nom. Washington* v. *Florida,* 419 U. S. 993 (1974).

[5] The *Petite* policy is most frequently applied against duplicating federal-state prosecutions. As stated by the Department of Justice, under that policy a federal trial following a state prosecution for the same act or acts is barred "unless the reasons are compelling." A United States Attorney contemplating a federal prosecution in these circumstances is required to obtain authorization from an appropriate Assistant Attorney General. In this case, the Justice Department official who instructed trial counsel to insist upon a retrial had not obtained the requisite approval.

But, as the *Petite* case itself illustrates, the policy also encompasses successive federal prosecutions arising out of the same transaction. In that case, the Solicitor General represented that "it is the general policy of the Federal Government 'that several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions, a policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement.' The Solicitor General on behalf of the Government represents this policy as closely related to that against duplicating federal-state prosecutions, which was formally defined by the Attorney General of the United States in a memorandum to the United States Attorneys. (Department of Justice Press Release, Apr. 6, 1959)." 361 U. S., at 530–531.

Court of Appeals to remand the case to the District Court to permit it to seek a dismissal of the indictment. The Court of Appeals granted the motion to remand.

The Government then filed a motion to dismiss the indictment pursuant to Fed. Rule Crim. Proc. 48 (a).[6] Noting that the Rule requires "leave of court," the District Court denied the motion because (1) the motion was not made until after the trial had been completed; and (2) the prosecutor had acted in bad faith by representing to the District Court that he had been properly instructed to maintain the prosecution notwithstanding the fact that petitioner had already been convicted of a state offense.[7] The Government, joined by petitioner and his codefendant Washington, appealed from the denial of the motion to dismiss.

A divided panel of the Fifth Circuit affirmed, *In re Washington,* 531 F. 2d 1297 (1976). The Court of Appeals then granted a petition for rehearing en banc and, by a vote of 7 to 6, reaffirmed the panel's holding. *In re Washington,* 544 F. 2d 203 (1976). All members of the court agreed that the Government's motion to dismiss was timely,[8] but they disa-

---

[6] Rule 48 (a) states:

"The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

[7] See n. 5, *supra.*

[8] The prior-authorization requirement in the *Petite* policy ensures that the Department of Justice will normally make the "compelling reasons" determination prior to commencement of the federal prosecution. On occasion, however, a prosecution is initiated and a conviction obtained in violation of the policy. When the Solicitor General has discovered such a violation in a case pending before this Court, he has sought to remedy it by moving to have the case remanded to allow the Government to dismiss the indictment. Exercising our power to afford relief which is "just under the circumstances," 28 U. S. C. § 2106, we have granted the Government's motion on several occasions. See *Watts* v. *United States,* 422 U. S. 1032 (1975); *Ackerson* v. *United States,* 419 U. S. 1099 (1975); *Hayles* v. *United States,* 419 U. S. 892 (1974); Cf. *Redmond* v. *United*

greed on the question whether the prosecutor's bad faith justified the District Court's refusal to set aside defendant's conviction.

The majority was of the view that the Government's unclean hands gave the District Court adequate reason to deny it relief,[9] and that the defendant had no right to have an otherwise valid conviction dismissed simply because the Justice Department violated its own procedures.[10] The dissenters were of the view that the District Court's inquiry should have been limited to the propriety of the Government's motivation in seeking a dismissal;[11] under their view, the earlier mis-

---

*States,* 384 U. S. 264 (1966); *Marakar* v. *United States,* 370 U. S. 723 (1962); *Petite* v. *United States,* 361 U. S. 529 (1960).

[9] The majority described the Government's bad faith in the following terms:

"In this case, an unidentified, but responsible, official within the Department authorized a federal prosecution with full knowledge that such a prosecution was forbidden by the Petite Policy. For the Government to attempt to dismiss by arguing that no compelling reason now exists for a separate federal conviction, when the considerations that allegedly imply a lack of 'compelling reason' were known as fully to the Government throughout both federal trials as now, does, for this court, constitute bad faith." 544 F. 2d, at 208.

[10] The majority stated:

"The fact that the Justice Department is now reconsidering its original decision to prosecute does not vest defendants with any right to have an otherwise valid conviction dismissed. . . . While a determination of such a motion obviously affects defendants, it is not a defendant's interest in avoiding a validly obtained conviction that we weigh in our examination of the propriety of . . . [the District Court's] order." *Id.,* at 209.

[11] They stated:

"[T]he withholding of leave [to dismiss] in this case was not justified. The motive of the prosecutor *in moving for dismissal* was based upon the Petite Policy which is not contrary to the public interest. The prosecutor may have acted in the conduct of the entire litigation in a manner not consistent with the public interest, but his motion to dismiss should not be tainted with that prior activity." *Id.,* at 213 (emphasis in original).

conduct was irrelevant and could not justify the judicial imposition of multiple convictions on the defendant.[12]

The policy described in the *Petite* case limits the federal prosecutor in the exercise of his discretion to initiate, or to withhold, prosecution for federal crimes. The policy is useful to the efficient management of limited Executive resources and encourages local responsibility in law enforcement.[13] But it also serves the more important purpose of protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct.

In this respect, the policy represents the Government's response to repeated expressions of concern by Members of this Court. In *United States* v. *Lanza*, 260 U. S. 377, 383 (1922), for example, Mr. Chief Justice Taft quoted the following passage from *Fox* v. *Ohio*, 5 How. 410, 435 (1847):

> "It is almost certain, that, in the benignant spirit in which the institutions both of the state and federal sys-

---

[12] The dissenters also questioned the logic of the majority's "bad faith" rationale:

"[I]n what has been determined and, indeed, confessed to have been bad faith, the government persisted in a prosecution and obtained, as a result of that bad faith, convictions. The majority holds today that, in order not to 'invite future misconduct by the Government,' we insist that the government be rewarded with the very convictions that it obtained through bad faith prosecutions and, we deny government counsel the right at long last to recant and in good faith dismiss the indictment." *Id.*, at 210–211.

[13] In announcing the policy, Attorney General Rogers stated:

"Cooperation between federal and state prosecutive officers is essential if the gears of the federal and state systems are to mesh properly. We should continue to make every effort to cooperate with state and local authorities to the end that the trial occur in the jurisdiction, whether it be state or federal, where the public interest is best served. If this be determined accurately, and is followed by efficient and intelligent cooperation of state and federal law enforcement authorities, then consideration of a second prosecution very seldom should arise." Dept. of Justice Press Release, Apr. 6, 1959, p. 3.

tems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor."

What has come to be known as the *Petite* policy was formulated by the Justice Department in direct response to this Court's opinions in *Bartkus* v. *Illinois,* 359 U. S. 121 (1959), and *Abbate* v. *United States,* 359 U. S. 187 (1959), holding that the Constitution does not deny the State and Federal Governments the power to prosecute for the same act. As these decisions recognize, in our federal system the State and Federal Governments have legitimate, but not necessarily identical, interests in the prosecution of a person for acts made criminal under the laws of both. These cases reflect the concern that if the Double Jeopardy Clause were applied when the sovereign with the greater interest is not the first to proceed, the administration of criminal justice may suffer. *Bartkus* v. *Illinois, supra,* at 137; *Abbate* v. *United States, supra,* at 195. Yet mindful of the potential for abuse in a rule permitting duplicate prosecutions, the Court noted that "[t]he greatest self-restraint is necessary when that federal system yields results with which a court is in little sympathy." *Bartkus* v. *Illinois, supra,* at 138.

In response to the Court's continuing sensitivity to the fairness implications of the multiple prosecution power, the Justice Department adopted the policy of refusing to bring a federal prosecution following a state prosecution except when necessary to advance compelling interests of federal law enforcement.[14] The *Petite* policy was designed to limit the

---

[14] At the heart of the policy announced by Attorney General Rogers was the statement:

"It is our duty to observe not only the rulings of the Court but the

exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power. Although not constitutionally mandated, this Executive policy serves to protect interests which, but for the "dual sovereignty" principle inherent in our federal system, would be embraced by the Double Jeopardy Clause. In light of the parallel purposes of the Government's *Petite* policy and the fundamental constitutional guarantee against double jeopardy, the federal courts should be receptive, not circumspect, when the Government seeks leave to implement that policy.

Here, the Government filed a motion under Fed. Rule Crim. Proc. 48 (a) seeking "leave of court" to dismiss the federal charges against petitioner. Under the standard applied by the Court of Appeals, the District Court was empowered to withhold leave if the Government's decision to terminate this prosecution clearly disserved the public interest. *United States* v. *Cowan,* 524 F. 2d 504, 513 (CA5 1975).[15] Pursuant

---

spirit of the rulings as well. In effect, the Court said that although the rule of the *Lanza* case is sound law, enforcement officers should use care in applying it.

"Applied indiscriminately and with bad judgment it, like most rules of law, could cause considerable hardship. Applied wisely it is a rule that is in the public interest. Consequently—as the Court clearly indicated—those of us charged with law enforcement responsibilities have a particular duty to act wisely and with self-restraint in this area." *Ibid.*

[15] The words "leave of court" were inserted in Rule 48 (a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, *e. g.,* charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. See, *e. g., United States* v. *Cox,* 342 F. 2d 167, 171 (CA5), cert. denied, *sub nom. Cox* v. *Hauberg,* 381 U. S. 935 (1965); *Woodring* v. *United States,* 311 F. 2d 417, 424 (CA8), cert. denied, *sub nom. Felice* v. *United States,* 373 U. S. 913 (1963). But the Rule has also been held to

to the instructions of a superior at the Justice Department, Government trial counsel represented to the District Court that the United States had decided to vigorously prosecute the federal charges against petitioner in spite of the prior state prosecution. In fact, however, the federal prosecution had not been authorized as required by the Government's *Petite* policy. The Court of Appeals considered the prosecutor's representations incompatible with the public interest in preserving the integrity of the courts. The salient issue, however, is not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety. Our examination of the record has not disclosed (and we will not presume) bad faith on the part of the Government at the time it sought leave to dismiss the indictment against petitioner. The decision to terminate this prosecution, based as it was on the *Petite* policy, was motivated by considerations which cannot fairly be characterized as "clearly contrary to manifest public interest." 524 F. 2d, at 513.[16]

---

permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest. See *United States* v. *Cowan*, 524 F. 2d 504 (CA5 1975); *United States* v. *Ammidown*, 162 U. S. App. D. C. 28, 33, 497 F. 2d 615, 620 (1973). It is unnecessary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same.

[16] In reaching a contrary conclusion, the Court of Appeals relied heavily on the remarks of a Government attorney during oral argument. Attempting to rebut the charge that the "responsible person" in the Justice Department who authorized this prosecution showed bad faith by not seeking the approval of the Attorney General, the Government attorney apparently contended it would be proper to continue a federal prosecution until the integrity of a prior state conviction was assured and then to seek dismissal of the federal charges. If counsel's argument represented the position of the United States, it would indeed mark a departure from

The overriding purpose of the *Petite* policy is to protect the individual from any unfairness associated with needless multiple prosecutions. The defendant, therefore, should receive the benefit of the policy whenever its application is urged by the Government.[17] Without derogating from the concern expressed by the Court of Appeals regarding the actions of certain Government officials at an earlier stage in this prosecution, we agree with the Solicitor General that "[n]o action by the Department or the Court can now replace the waste of judicial and prosecutorial resources expended in obtaining petitioner's conviction . . . [and] no societal interest would be vindicated by punishing further a defendant who has already been convicted and has received a substantial sentence in state court and who, the Department has deter-

---

the *Petite* policy. But we are persuaded that counsel's overzealous attempt to rationalize the prior conduct of the prosecution did not signal a new Executive policy on multiple prosecutions. The Solicitor General unequivocally states that the Government has strictly adhered to the *Petite* policy since its announcement in 1959. Memorandum for United States 3, 7. The Solicitor General represents further that the Government sought dismissal of the indictment in this case because it discovered on appeal from petitioner's federal conviction that the prosecution was initiated and maintained without the prior authorization required by the *Petite* policy. *Id.*, at 3, 6–7. There is no suggestion in this case that the Assistant Attorney General charged with enforcement of the *Petite* policy was cognizant of the violation until shortly before the Government's request for leave to dismiss the indictment. In these circumstances, we cannot accept the conclusion of the Court of Appeals that the Government's decision to dismiss the indictment was made in bad faith.

[17] The Court of Appeals thought it necessary to deprive petitioner of the policy's benefit in order to deter future misconduct by Government attorneys. As did the dissenters below, we fail to see how rewarding those responsible for the *Petite* policy violation with a conviction serves to deter prosecutorial misconduct. Indeed, a result which leaves intact a conviction obtained through a prosecution tainted by bad faith may encourage repetition of the impropriety disclosed by the record in this case.

mined, should not have been prosecuted by the federal government."

It was, therefore, an abuse of the discretion of the District Court to refuse to grant the Government's motion on the ground that the violation of the *Petite* policy in this case resulted from prosecutorial misconduct rather than inadvertence. The motion for leave to proceed *in forma pauperis* and the petition for writ of certiorari are granted. The judgment is vacated, and the case is remanded to the District Court for the purpose of dismissing the indictment.

*It is so ordered.*

MR. CHIEF JUSTICE BURGER, dissents.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE WHITE joins, dissenting.

In *Watts* v. *United States,* 422 U. S. 1032 (1975), this Court, with three Justices dissenting, remanded a federal criminal case with instructions to dismiss the indictment because of the concession of the Solicitor General that the Justice Department had accidentally violated its own *Petite* policy. See also *Ackerson* v. *United States,* 419 U. S. 1099 (1975); *Hayles* v. *United States,* 419 U. S. 892 (1974). Whatever may be the propriety of our assisting in the enforcement of the Justice Department's internal *Petite* policy, the Court today places its imprimatur on a quite different and unsettling prosecutorial policy. Under this new policy, the Government prosecutes under federal laws individuals who have already been tried and convicted of violating similar state laws in order to protect against the possibility of the state convictions' being reversed on appeal, but the policy contemplates that the federal prosecutions will be dismissed, even after entry of guilty verdicts, if the state convictions are ultimately affirmed. According to the Court of Appeals:

"[T]he Government attorney conceded that a 'responsible person' within the Department of Justice . . . was aware

that the Petite Policy was being violated through its prosecution of defendants, but nevertheless, out of his fear that the state convictions would be reversed on appeal, instructed the trial attorney to proceed with the case; only after a Florida appellate court affirmed the state convictions and after defendants raised the Petite Policy on appeal did the Government move for dismissal. . . . [According to the Government attorney], the position of the Department of Justice is *not* that the prosecution should never have been brought, but that once the state convictions had been affirmed the Government could properly have moved to dismiss the federal indictment against defendants. Indeed, he states that had permission to prosecute been sought from an Assistant Attorney General by the 'responsible person' in charge of the case, it might well have been given and hence, there would have been no violation of the Petite Policy. Had that event occurred, . . . it would have then been absolutely proper, once the Florida appellate court affirmed the state conviction on appeal, for the Department of Justice to rescind, retroactively, its authorization of the prosecution and now, finding the Petite Policy to have been violated by a federal trial for an offense for which a state prosecution was made, to seek a dismissal based on this violation of the policy and the interest against duplicitous prosecutions that it seeks to promote." *In re Washington,* 544 F. 2d 203, 207.*

---

*The Solicitor General does not contradict or repudiate the position of the Government attorney who argued before the Court of Appeals. Under such circumstances, this Court should not casually reject the Court of Appeals' understanding of the position of the Department of Justice in this case, an understanding that the dissenters there apparently shared. According to the Solicitor General, when the Government's appellate counsel was informed that the prosecutor had not strictly followed the Justice Department's *Petite* policy, further consideration was given to the case within the Department and "it was determined that there were no com-

Federal Rule Crim. Proc. 48 (a) allows the United States to move to dismiss an indictment only "by leave of court." This proviso was specifically added as an amendment to the original draft, which had provided for automatic dismissal upon the motion of the United States, and would seem clearly directed toward an independent judicial assessment of the public interest in dismissing the indictment. Cf. *United States* v. *Cowan,* 524 F. 2d 504 (CA5 1975). Here, both the District Court and the Court of Appeals concluded that dismissal would not be in the public interest. I cannot find this conclusion an abuse of the discretion given the lower courts by Rule 48 (a). As the Court of Appeals reasoned, "the Government's attempt to manipulate the use of judicial time and resources through its capricious, inconsistent application of its own policy clearly constitutes bad faith and a violation of the public interest; our sanction of such conduct would invite future misconduct by the Government." 544 F. 2d, at 209.

In the past, the Court has ordered indictments dismissed upon the Government's concession that it violated its own *Petite* policy without discussing the justification for its action. Here, in its first full opinion on the subject, the Court again fails to enunciate why federal courts must reverse a valid conviction because of the Government's admission of administrative error not going to the guilt or innocence of the defendant. Cf. *Watts, supra,* at 1032–1038 (BURGER, C. J., dissenting). The apparent inability of the Court to agree on a rationale for enforcing the Government's *Petite* policy at its request suggests that this case is inappropriate for summary disposition and should be set for full argument.

---

pelling reasons to justify *retroactive* authorization of petitioner's prosecution." Memorandum for United States 3 (emphasis added). By this time, as the Court of Appeals noted, the state conviction was safely affirmed.