UNITED STATES of America, Plaintiff-Appellee,

v.

Robert HAMM, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Willis Judge BUTLER, Les Wallick Fuller, Dayton Bud Evans, Jr., and Larry Dale Washington, Defendants-Appellants.

Nos. 80–1315, 80–1331.

United States Court of Appeals, Fifth Circuit.

Unit A

March 2, 1981.

Rehearing and Rehearing En Banc Granted. See 644 F.2d 354.

Edward D. Foreman, P. A., Thomas E. Reynolds, St. Petersburg, Fla., for Robert Hamm.

Randy Schaffer, Houston, Tex., for Larry Dale Washington.

Melvyn C. Bruder, Dallas Tex., for Willis Judge Butler and Dayton Bud Evans, Jr.

John H. Hannah, Jr., U.S. Atty., Tyler, Tex., David P. Baugh, Asst. U.S. Atty., Sandra Dearborn, Legal Technician, Beaumont, Tex., William C. Bryson, Peter E. Scheer, Attys., Dept. of Justice, Washington, D.C., for the United States.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

AINSWORTH, Circuit Judge:

The convicted appellants and the government prosecutor in these consolidated appeals jointly challenge the district court's denial of the prosecutor's motion to dismiss the indictments against the appellants, its refusal to allow the appellants to withdraw their guilty pleas, and the court's procedures in accepting the guilty pleas in the first place. We hold that the district court erred in denying the motion to dismiss the indictments and accordingly reverse. It is therefore not necessary to discuss the other issues.

Appellants Fuller, Washington, Butler and Evans were among fourteen persons named in a multicount indictment on January 16, 1979, alleging their participation in the shipment of approximately 40,000 pounds of marijuana from Santa Marta, Colombia, to Port Arthur, Texas, aboard the vessel Agnes Pauline.[1] Appellant Hamm's indictment, dated May 1, 1979, alleged his participation in the same 40,000-pound shipment plus several other shipments totaling approximately 137,000 pounds.[2] All of the appellants entered into plea-bargaining agreements with the prosecutor whereby they pleaded guilty to one count of their indictment and the Government dismissed all other counts in return for their cooperation in securing evidence against the leaders of the drug-smuggling conspiracy and their testimony at the leaders' trials. At the time of the plea, no explicit agreement existed as to sentencing.[3] District Judge Joe J. Fisher accepted the guilty pleas and postponed sentencing to assure the appellants' cooperation. After the appellants pleaded guilty, but several months before they were brought before the judge for sentencing, the Government agreed to modify the plea-bargaining agreement in light of how extraordinarily useful the appellants had proved to the United States Attorney's continuing investigation and the great personal risk they took in making their revelations.[4] The prosecutor agreed to recommend a maximum of two years' imprisonment for Hamm and a maximum of six months for the other appellants. There is considerable evidence in the record to support the appellants' contentions that the prosecutor led them to believe that the judge had agreed to follow the sentencing recommendations.

The trial judge apparently had not been informed of the modified agreement, however.[5] On February 29, 1980, appellant

---

1. Fuller, Washington, Butler and Evans were each indicted on one count of conspiracy to violate the drug laws under 21 U.S.C. §§ 846 & 963 and one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In addition, Fuller and Evans were indicted for importation of marijuana into the United States in violation of 21 U.S.C. § 841(a), and Fuller was indicted for three firearm counts under 18 U.S.C. § 924(b) and 26 U.S.C. §§ 5861(d) & 5871.

2. The indictment of May 1, 1979, listed Hamm as "BOB (LAST NAME UNKNOWN)." He was formally named in a superseding indictment on July 10, 1979, and charged with one count of conspiracy to violate the racketeering laws under 18 U.S.C. § 1962(d) and two counts of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

3. Apparently the appellants believed that an agreement would later be negotiated as to sentence or sentence recommendation. The communication breakdown in this case was compounded by the prosecutor's requirement that the appellants keep their agreement to cooperate secret to avoid harm to the appellants and to prevent warning the still unindicted leaders of the conspiracy. Record on Appeal (80–1331), Vol. 7 at 48–53.

4. Appellants Hamm and Butler were apparently threatened during the trial. The concern for the safety of the appellants was so great that the court installed a metal detector to screen persons entering the courtroom. Record on Appeal (80–1331), Vol. 7 at 20, 23–24.

5. It may be that the trial judge indirectly learned about the sentencing agreements when the appellants were cross-examined at the trials of the conspiracy leaders. Defense counsel in those cases questioned the appellants about their agreements with the Government in an effort to impeach their testimony; some of these trials were before Judge Fisher. See Record on Appeal (80–1331), Vol. 7 at 37–38, 53–54.

Fuller and a codefendant not a party to this appeal were brought before the court for sentencing. Judge Fisher informed the prosecutor and the defendants that he had not been apprised of the sentencing agreement and would not be bound by it. Fuller then requested and received permission to withdraw his guilty plea. On March 4 and 5, 1980, the prosecutor moved to dismiss the indictments against all of the appellants under Rule 48(a) of the Federal Rules of Criminal Procedure.[6] On March 7, Judge Fisher denied the Government's motion, refused to permit the appellants to withdraw their pleas,[7] and sentenced them.[8]

This case comes before the court in an unusual posture: both the convicted appellants and the United States Attorney, nominally the appellee, urge this court to set aside the judgment below and order the dismissal of the indictments. In his memorandum opinion, the district judge points out that Rule 48(a) requires leave of the court before a prosecutor can dismiss an indictment. The difficulty in this case comes in determining in what situations leave can be denied and in balancing the constitutional duty of the Executive Branch to "take care that the laws [are] faithfully executed"[9] with the judicial power, most particularly the sentencing power of trial judges.

■ In *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), *cert. denied sub nom. Woodruff v. United States*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976), this court interpreted Rule 48(a) to accommodate the powers and duties of the two branches:

We think [Rule 48(a)] should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed. The resulting balance of power is precisely what the Framers intended .... The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest

6. Rule 48(a) states:
   Dismissal.
   (a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

7. Since the district judge had granted Fuller's motion to withdraw his guilty plea on February 29, Fuller was not before the court when the others were sentenced on March 7. Judge Fisher ordered Fuller to appear on March 10, however, and at that time the judge, in effect, revoked his permission to withdraw the plea and sentenced Fuller. The judge stated that he was "misled" on February 29 into believing that the sentence agreement existed prior to the guilty plea and that he subsequently learned that the sentence agreement was not negotiated until after the plea. "So, the Court, having been misled in this regard, we of course, will not permit you to withdraw your plea of 'Guilty.'" Record on Appeal (80–1331), Vol. 8 at 4 7. Nothing in the transcript of February 29 gives the impression that defense counsel intentionally misled the court, however. In fact, Fuller filed a Notice of Plea Agreement with the court on February 29 before the sentencing proceeding. Attached to that notice was a letter of agreement from the United States Attorney to Fuller's attorney which clearly indicated that the sentencing agreement was negotiated on June 2, 1979, several months after the guilty pleas. Record on Appeal (80–1331), Vol. 3 at 73–74.

On March 24, 1980, the district judge issued a memorandum opinion "to expand and clarify [his] earlier decision" to deny the motion to dismiss and the motions to withdraw the guilty pleas. That opinion is reported at 486 F.Supp. 1285.

8. Hamm, Butler, Evans and Washington were each sentenced to two years' imprisonment, three years' special parole and a $5,000 fine. Fuller received two years in prison, but with only six months to be served (the remainder suspended), plus two years' special parole and a $1,000 fine. The modified plea-bargaining agreement envisioned a maximum of six months' imprisonment for all except Hamm, who was to receive a maximum of two years.

9. U.S.Const. Art. II, § 3.

public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

524 F.2d at 513. Thus, this court limited the discretion of the trial judge to deny leave to dismiss an indictment to cases where dismissal would be "clearly contrary to manifest public interest."

The district judge correctly pointed out in his opinion that the present case can be readily distinguished from *Cowan*: in *Cowan*, the United States Attorney sought to dismiss the indictment before trial, while in this case the prosecutor moved to dismiss the indictment after the defendants had been found guilty:

> The Court, of course, recognizes that the United States attorney is the "best judge of whether a *pending* prosecution should be terminated." ... Here, however, unlike the situation in *Cowan* where the court needed to appoint a special prosecutor to try the indictment, the Court has already found the defendants guilty of the crime charged in the indictment and the prosecutorial function is only minimally involved in the process of criminal justice. Accordingly, when only sentencing of the defendants remains, it is appropriate for the Court to pay less deference to the decision of the United States Attorney than it normally would.

486 F.Supp. at 1294 (citations omitted). This analysis, however, does not give effect to the holding of the Supreme Court in

*Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). In reversing the en banc opinion of this court,[10] the Supreme Court, citing *Cowan*, held that the district court could not deny leave to dismiss an indictment unless "the Government's decision to terminate [the] prosecution clearly disserved the public interest." 434 U.S. at 29, 98 S.Ct. at 85. The petitioner in *Rinaldi* had already been tried, convicted and sentenced to imprisonment. It is thus clear that the standard set out in *Cowan* and adopted in *Rinaldi* applies regardless of the state of prosecution at which the Government moves to dismiss the indictment.[11]

■ We must therefore examine whether the prosecutor's motion to dismiss was clearly contrary to the manifest public interest. In finding that dismissal would not be in the public interest, the district judge stated that "[i]f the public interest would have been served by the dismissal of the indictment against these defendants, the United States Attorney's Office would have moved for dismissal long ago." 486 F.Supp. at 1294. As we point out above, this contention is refuted by *Rinaldi*, in which the prosecutor's motion for dismissal was at an even later stage than in the present case.

■ The trial court also held that the prosecutor did not present sufficient factual information to show that the public interest would be served, and that "nothing more than" information about prior cooperation

---

10. *In re Washington*, 544 F.2d 203 (5th Cir. 1976). In *Washington*, the en banc court stated that "the postconviction timing of the Government's motion [was] not sufficient, alone, to justify the court's refusal to dismiss the indictment." 544 F.2d at 206. The court went on to uphold the trial judge's finding that the Government's motion to dismiss was not in the public interest, however.

11. In his memorandum opinion, the trial judge stated that "the action of the United States Attorney to dismiss the indictment ... is nothing more than a camouflaged attempt to limit the 'sentencing authority reserved to the judge.'" 486 F.Supp. at 1294–95. We agree that sentencing must remain the prerogative solely of the trial judge, but we disagree that the Government's only reason for seeking to

dismiss the indictment was to usurp the sentencing function. Moreover, if the prosecutor determines that the public interest would be better served by dismissal than by the sentence the judge wishes to impose, *Cowan* and *Rinaldi* give him the right to have the indictments dismissed. It is interesting to note that Rule 11(e) of the Federal Rules of Criminal Procedure gives the prosecutor the right to enter into an agreement with a defendant binding the court to a particular sentence. If the judge rejects the agreement, he must permit the defendant to withdraw the guilty plea. At that point, with the plea withdrawn, the prosecutor certainly can have the indictment dismissed. It is difficult to see how that procedure is any less of an encroachment upon the judge's sentencing power than the procedure followed in this case.

would not support a finding that dismissal would be in the public interest. We disagree for three reasons. First of all, Judge Fisher appears to have placed the burden on the prosecutor to show that dismissal would be in the public interest. The language of this court in *Cowan* and the Supreme Court in *Rinaldi* makes it clear that the motion should be granted unless the trial court has an affirmative reason to believe that dismissal would be contrary to the public interest. As the district judge acknowledged, the prosecutor is the first and presumptively the best judge of where the public interest lies. The trial judge cannot merely substitute his judgment for that of the prosecutor, he must instead defer to the prosecutor unless the prosecutor is clearly wrong. Granting leave is the norm, and the trial judge must give adequate reasons to support his denial.[12]

■ Second, we disagree with Judge Fisher's notion that the public interest cannot be served by dismissing an indictment because of the defendants' past cooperation. The decision to dismiss may be the prosecutor's way of letting future conspiracy defendants know of the possible advantages of cooperation. It may very well be crucial to the prosecutor's credibility in future cases involving informants or defendants who testify in return for lenient treatment.

■ Finally, we disagree with the district judge's assertion that the only reason for dismissing the indictment was to reward the appellants for past cooperation. The prosecutor argued in support of the motion that the continued cooperation of the appellants would be needed in the prosecution of other leaders of the drug-smuggling conspiracy:

I would like to call the Court's attention, in addition, that these smuggling cases that are referred to are continuing cases,

and as Your Honor was well aware, from sitting through the trial, that there are other Defendants as yet unidentified. Some Defendants, we have some identification on, and it is anticipated that other Indictments will be returned and the cooperation of these witnesses will again be necessary.

Record on Appeal (80–1331), Vol. 7 at 17–18. He later made the same point even more emphatically:

[I]t is the position of the United States Attorney's Office, particularly me, as the Chief Investigator for this case, that not to grant this dismissal will effectively stop our investigation, and will have the effect of protecting the kingpins involved in marijuana smuggling in this [sic] United States.

*Id.* at 27. The prosecutor also mentioned that threats had been made on the lives of at least two of the appellants, and that they might carry the "taint of a cooperating individual" and might therefore be harmed by other inmates if imprisoned. *Id.* at 20, 23–24.

■ In light of the arguments made by the Government in support of its motion to dismiss, we cannot agree with the district judge that dismissal of the indictments would be clearly contrary to the manifest public interest. As *Cowan* and *Rinaldi* point out, and as Judge Fisher acknowledged, the determination of the public interest in the first instance is for the prosecutor to make. We cannot find that the prosecutor mistakenly gauged the public interest when he decided that the past and future cooperation of the appellants warranted dismissal of the indictments against them. We therefore reverse, and remand with directions to sustain the Government's

---

12. The district judge cites *United States v. Ammidown*, 497 F.2d 615 (D.C.Cir.1973) for the proposition that the prosecutor must present information in support of its motion to dismiss. Although we agree with the District of Columbia Circuit that the prosecutor should supply more than "a mere conclusory statement by the prosecutor that dismissal is in the public inter-

est," we find that sufficient reasons were given by the prosecutor in the present case. If *Ammidown* is read to place the burden on the prosecutor to prove that dismissal is in the public interest, however, then it is contrary to our rule enunciated in *Cowan* and to the Supreme Court's holding in *Rinaldi*.

motion to dismiss the indictments against all of the appellants.[13]

REVERSED AND REMANDED.

---

**13.** Counsel for appellant Fuller has brought to our attention that Fuller was killed in an airplane accident subsequent to the filing of the notice of appeal in this case. When a criminal appellant dies after filing a notice of appeal of his conviction, the long-standing rule of this court is that the indictment be dismissed. Therefore, even if we had not ordered the district court to dismiss the indictment as to the other appellants, we would have to do so as to Fuller. Any fine paid by Fuller must, of course, be refunded.