**UNITED STATES of America, Plaintiff,**

v.

**Allen FRIEDMAN, Defendant.**

**No. CR 83–188.**

United States District Court,
N.D. Ohio, E.D.

Oct. 2, 1985.

Steven Jigger, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Jack M. Levin, Dennis P. Levin, Cleveland, Ohio, for defendant.

## ORDER

BELL, District Judge.

Before this court lies a prosecution motion to dismiss certain charges brought by indictment against the defendant, Allen Friedman. Inasmuch as a ruling on that motion involves certain issues of import to the parties and to the citizens of this district, it is beneficial to state and comment upon those issues at some length.

### I

Because they have pertinence to other sections of this opinion, the facts leading to the motion in question may be usefully reviewed.

On July 14, 1983, Mr. Friedman was indicted on four counts of embezzling funds from a labor organization, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter Teamsters), Local Union 507. Each of these counts alleged a violation of federal law, to-wit: 29 U.S.C. section 501(c). On November 3, 1983, Mr. Friedman was convicted by a trial jury and was thereafter sentenced to concurrent terms of three years imprisonment on each count and fined a total of $10,000.00. On July 31, 1984, 740 F.2d 969, his appeal to the Sixth Circuit Court of Appeals resulted in an affirmance of the convictions. Prior to trial, defendant filed a number of discovery motions to which the government made what were apparently believed to be appropriate responses.

In September, 1984, Mr. Friedman began serving his sentence at a federal correctional facility. In July of the following year, he filed a *pro se* application for post conviction relief pursuant to 28 U.S.C. section 2255. The arguments made by him in this request focused in part on the allegation that his attorneys had prevented him from calling as his witness during trial, Mr. Jackie Presser, his nephew, and president of the international Teamsters union. After direct inquiry was made by the court, Mr. Friedman personally withdrew the application in question as well as the allegations supporting it. The motion is noted only because of the defendant's expression of desire to have had Mr. Presser testify as a defendant's witness at the time of trial. Also important is the fact that, although the defendant apparently believed that Mr. Presser was of some value to him in the defense of his cause, that witness was neither called to testify during the course of trial, nor was his deposition obtained during the trial period. Nothing suggests that defendant has attempted to secure Mr. Presser's testimony since this case has been reopened even though defendant's attention was drawn to the possible utilization of Rule 15 of the Federal Rules of Criminal Procedure.

On August 2, 1985, Mr. Friedman, by counsel, moved for a new trial on the grounds of newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Hearings were held pertaining to this motion on August 16 and August 26, 1985. The government acquiesced in the motion and the trial court granted the request after first determining that if material information existed which was properly sought by the defendant prior to his original trial and which had not been disclosed to him, then a sufficient basis existed to mandate a new trial. Since the government represented that such information did exist, the court in the interest of justice and pursuant to Rule 33 of the Federal Rules of Criminal Procedure, granted the motion for new trial. As a result of the granting of this motion, the defendant's sentence was vacated and he was released on bond.

After a preliminary suggestion on August 16 that it would do so, the government moved, on August 26, to dismiss the indictment against the defendant pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. This motion was subsequently amended to include yet a further concession to the defendant: a dismissal with prejudice to further proceeding against him involving the facts upon which his conviction had been based.

The reasons advanced by the government as a basis for its motion were stated in various forms, most fully developed in its argument during oral hearing. The reasons appear to be twofold: (1) the informant privilege, and (2) the government's decision not to disclose matters material to Mr. Friedman's defense. To allow further discussion on the question of dismissal and refinement of defendant's most recent requests for discovery, the court continued the August 26 hearing until September 20, 1985. Briefs and renewed requests were filed by both parties and these were the subjects of discussion on the September 20 date. It is to these motions that this opinion is directed.

One further recitation of circumstances must be made to complete the factual setting for this discussion. At the hearing on August 26, the court was informed by the government that those material facts which it now desires not to disclose were discovered by the prosecutorial team *after* the conclusion of the trial proceedings involving Mr. Friedman. Thus, it was argued, the answers given to defendant's pretrial discovery requests were accurate to the best knowledge of the prosecutors at that time. However, the prosecution states that additional facts are now known to them which are asserted to be relevant to a proper defense. Due to these unusual circumstances the court requested the assistance of the Justice Department in submitting this matter to grand jury inquiry to determine whether such facts were wrongfully withheld at the time in question. A federal grand jury has been convened and is now investigating that matter. Again, comment is made here concerning this facet of this cause inasmuch as it has direct relevance to further discussion of the merit of the motions.

## II

As a starting point, it is logical to consider the government's motion to dismiss. To do so, it is well to note once again certain facts which form a framework for our consideration as well as some additional refinement of the positions taken by the parties.

Allen Friedman has had a lengthy involvement with Teamsters, Local 507. He was employed as a business agent of the local before his indictment. His nephew, Jackie Presser, had long been active in Teamster affairs in the Cleveland area and has, in due course, followed his father, William Presser, as an officer of the International.

It is common knowledge that for some time various grand juries empaneled in the Northern District of Ohio have considered charges against Mr. Presser. No indictment has been rendered against him to date. One of the grand juries conducting inquiry involving Jackie Presser rendered the indictment against Mr. Friedman. Interestingly, while the factual basis upon which Mr. Friedman was indicted centered upon his receipt of salaries from Local 507 while performing no work for that organization, the fact that Mr. Presser was a signatory to Friedman's salary checks did not result in Presser's indictment for paying his uncle and/or any other so-called "ghost employees." It is suggested in this connection by counsel for the defendant that Mr. Presser himself is the informant whom the government seeks to protect by the use of the informant privilege protection. Nothing in the record before this court serves to confirm or to deny that suggestion. Again, there appears to have been no action on the part of the defendant to secure such information from Mr. Presser himself.

Early in 1985, the government announced that, for reasons not yet publicly disclosed, it would not proceed with the prosecution of Mr. Presser. The grand jury which indicted Mr. Friedman, and whose investigation was terminated as to Mr. Presser, was assisted by members of the Department of Justice Strike Force in conjunction with case agents from the Department of Labor.

Defendant Friedman now asserts that information made available to Strike Force personnel by one or more investigative branches of the government in relation to the Presser investigation is material to his defense and, in particular, to his proposed use of an entrapment defense. He suggests that Mr. Presser was an agent of the government and, as such, did himself participate in the so-called "ghost employee" scheme which in turn involved Mr. Friedman.

Reference has been made to defendant's post-conviction request filed pursuant to 28 U.S.C. section 2255. The pertinence of this reference is to point out, first, that defendant viewed Mr. Presser as a defendant's witness, and second, that he has never been foreclosed by the government from obtaining information directly from Mr. Presser concerning what role, if any, Mr. Presser

had in this "ghost employee" scheme. It is difficult to reconcile defendant's complaint that the public is being deprived of information in some fashion, with his failure to seek that information from a witness accessible to him.

On the government's part, counsel concedes that it is in possession of information which is first, material, and second, helpful to the defense. Further, the government admits that it would be obliged to turn over the information in question to the defendant either pursuant to its obligation under the rule set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or its similar duty as mandated by Rule 16 of the Federal Rules of Criminal Procedure. The government maintains that the information was not knowingly withheld from the defendant at the time immediately preceding trial and was, indeed, not known to the prosecutorial team at that time. Undisputed, however, is the obligation to make such material available upon request for discovery now.

The government states that, although it could comply with the defendant's request, to do so would be to compromise the governmental interest protected by some form of informant privilege. Under the circumstances, however, it also states it cannot comply with the discovery request. Affirming this posture as a basis, the prosecution requests as an alternative, a dismissal of this cause.

To add one additional circumstance is to underline once again the peculiar nature of the dispute over the motion. Mr. Friedman opposes the motion to dismiss—even the request to dismiss with prejudice. He contends he has a right to "clear his name" and decries the abandonment of the case as an act preclusive of the public's right to know the salient facts underlying the Friedman prosecution.

Thus, surrounding the reality of the circumstances known and recited on the record, are the shadows of circumstances as yet unknown, which cause this court to look to the motion presented by the govern-ment with question, if not some degree of suspicion.

## III

Under the common law, and absent specific statutory language to the contrary, both the birth and death of a given prosecution were entrusted to the unfettered discretion of the prosecution until such time as a trial jury was empaneled. *United States v. Cowan*, 524 F.2d 504, 505 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). The more recent rule is that enunciated in Rule 48(a) of the Federal Rules of Criminal Procedure, which reads in pertinent part as follows:

The Attorney General or the United States Attorney may *by leave of court* file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant. (Emphasis added.)

The addition of the words "by leave of court" was initiated by the Supreme Court of the United States and that addition was adopted by Congress in the suggested form. *United States v. Cowan*, 524 F.2d at 510–11. Interpretation of this rule in its present form has been addressed by a number of trial and appellate tribunals in various contexts and as questions concerning its meaning arose in a variety of trial and pretrial settings. *See Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (motion made after sentencing); *United States v. Salinas*, 693 F.2d 348 (5th Cir.1982) (motion made after jury selected but now sworn); *United States v. DuPris*, 664 F.2d 169 (8th Cir.1981) (motion made prior to trial); *United States v. Hamm*, 638 F.2d 823 (5th Cir.1981) (en banc) (motion made after plea but before sentencing); *United States v. Cowan*, 524 F.2d at 504 (motion made after indictment returned and defendant had entered a plea agreement in another federal district); *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir.1974) (motion made after plea agree-

ment rejected); *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n, Inc.*, 228 F.Supp. 483 (S.D.N.Y.1964) (motion made prior to trial).

It is evident that the words "by leave of court" were inserted into Rule 48(a) to serve as a limitation upon the prosecution's common law power to dismiss indictments. The inclusion of such an expression has been viewed by some as a judicial check on the absolute power of the executive to dismiss a given cause, and not as an infringement upon the discretion of the executive branch in executing its constitutional duties. *See United States v. Cowan*, 524 F.2d at 512–13; *United States v. Cox*, 342 F.2d 167, 190 (5th Cir.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). Except for *Rinaldi*, the opinions dealing with circumstances similar to our own are not strictly binding upon this court because of some ribbon of precedent. The logic of those opinions, however, is undoubtedly persuasive and has been considered in arriving at a legal conclusion here.

It is this court's opinion that the case at hand must be viewed in accordance with long-accepted principles of constitutional law. In brief, governance of our republic has been delegated by our people to three separate and independent branches of government. The executive branch, of which the office of the Attorney General is an integral part, derives its authority from the wording of Article II, Section 3 of the Constitution which entrusts to that entity the faithful execution of the law. The judiciary is obviously not a part of the executive branch but draws its separate constitutional origin from Article III of the same document.

The entrustment of this court is not, however, to define the limitations of constitutional power; it is only to state that they exist and because they exist, each—as well as the powers of the legislative branch— acts as a check on the absolute power of the other in given situations. In this sense, the words of reservation inserted into Rule 48(a) reflect only a power in one branch to check the excessive use of power in another and are for the ultimate benefit and protection of the people themselves. It is this end result to which Judge Murrah referred in his thoughtful opinion in *Cowan*. Since they have application here, those words follow:

> The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination should not be judicially disturbed unless clearly contrary to the manifest public interest. In this way the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

*Id.* at 513.

## IV

This court then, is committed to addressing the government's motion in a manner most consistent with the doctrine of separation of powers. Further, since other opinions in other times have provided sound legal reasoning, there exist guidelines of value to be followed in reaching an eventual decision.

■ It is the presumption of the law that the government's motion for dismissal is made in good faith and is based upon substantial reasons which serve the public interest. *United States v. Salinas*, 693 F.2d at 352; *United States v. Hamm*, 638 F.2d at 827–28; *United States v. Cowan*, 524 F.2d at 513; *United States v. Ammidown*, 497 F.2d at 621. This presumption may be rebutted, however, if it is shown that the motion has not been made in good faith, *United States v. Salinas*, 693 F.2d at 352, or that the result of the dismissal would be clearly contrary to the manifest public interest. *United States v. Hamm*, 638 F.2d at 827. Any finding that a dismissal would be clearly contrary to the public interest might necessarily impugn the prosecution's good faith in filing the motion.

At this juncture, it should be noted that while the cases cited have as their focus legal questions similar to ours, none are factually the same. In the instant cause, the government acquiesced in the motion for new trial and has admitted that it has in its possession information which might be material to the Friedman defense. Because of the peculiar factual setting in this case, the court deemed it appropriate to request a grand jury review of the initial proceeding. The government's subsequent motion to dismiss, then, engenders reason to approach the motion with caution. The court is also aware (as is anyone who is aware of information disclosed through the news media) that this matter has some undefined linkage to what has been termed "the Presser investigation."

We are instructed in this area by the words contained in the Supreme Court opinion in *Rinaldi v. United States*, 434 U.S. at 30, 98 S.Ct. at 85–86, 54 L.Ed.2d at 214. The Supreme Court approached circumstances not dissimilar to those in the instant cause in the following manner:

> The salient issue, however, is not whether the decision to maintain the federal prosecution was made in bad faith but rather whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety. Our examination of the record has not disclosed (and we will not presume) bad faith on the part of the Government at the time it sought leave to dismiss the indictment against petitioner. The decision to terminate this prosecution, based as it was on the *Petite* [*v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)] policy, was motivated by considerations which cannot fairly be characterized as "clearly contrary to manifest public interest." 524 F.2d, at 513.

*Id.* (citing *Cowan*).

The court's focus must thus be on the government's good faith at the time the motion was made. In this regard, the court's questions concerning the motion are not really resolved by the government's assertions that on one hand the information it seeks not to disclose is material and of assistance to the defense, but on the other hand is not necessarily exculpatory. Carefully defined by the prosecution, the information seems to be something in the nature of hybrid Rule 16-*Brady* material which is somehow helpful but not such as to constitute a real basis for Mr. Friedman's acquittal in the event his cause were retried. The lack of clarity in this representation is troubling, particularly since the court heard, as did the trial jury, the voluminous evidence produced against this defendant and upon which his conviction and the appellate affirmance were based. This evidential reason, standing alone, cannot be considered as justifying the grant of the motion to dismiss.

In the instant case, the government also bases its dismissal motion on certain governmental policies underlying what it terms the informant privilege. *See Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Whitley*, 734 F.2d 1129 (6th Cir.1984); *United States v. Jiles*, 658 F.2d 194 (3d Cir.1981). This policy reason advanced joins with the evidential reason noted previously to serve as the true basis for the motion. It is clear that the privilege invoked here furthers the public interest in effective law enforcement by protecting the identity of those who furnish to the government information relative to violations of law. *United States v. Whitley*, 734 F.2d at 1137 (citing *Roviaro*).

■ To refine what has been said previously: To dismiss this matter with prejudice simply because the government does not wish to comply with normal rules of discovery under Rule 16 or the mandates of *Brady* might well be considered as being contrary to the manifest public interest. But such a disclosure, coupled with the likelihood that an informant's identity or involvement in this investigation would be revealed raises an entirely different question. Thus, the manifest public interest must be considered not from the evidential disclosure aspect above, but with an appreciation of the relationship between eviden-

tial disclosure and informant privilege policy considerations.

■ While the governmental prerogative in the preservation of anonymity of informants may be clearly beneficial, it is also limited and must give way in such instances where a failure to disclose would deprive an accused of relevant material helpful to his defense or essential to a fair determination of the charges made against him. *See Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 644–45. At the same time, however, the government's alternative—a dismissal of the case—must also be recognized. It is this alternative which the government seeks to adopt in this cause. Its evaluation suggests that the protection of the information in question is fully in the public interest and this evaluation in turn requires that the prosecution of Mr. Friedman should and must be terminated.

The public interest which the executive branch seeks to protect has been recognized by the Supreme Court as being worthy of, and entitled to, this court's respect. *Roviaro, id.* It cannot be said then that the reasons advanced for dismissal here are "clearly contrary to the manifest public interest." *United States v. Cowan*, 524 F.2d at 513. *See also United States v. Hamm*, 638 F.2d at 828.

The defendant's personal objection to the dismissal is also a factor to be adjudged. The court is of the opinion that when the motion for new trial was granted, the instant case reverted to its pretrial stage and not to a trial stage as contemplated in the second sentence of Rule 48(a). This being so, Mr. Friedman's consent to the dismissal motion is not required. This is not to say, however, that the concerns voiced by him should not be given some deference by this court. Defendant's path of travel to this point in the proceedings include his indictment, his public trial, his conviction and appellate process. This, to say the least, gives him a personal interest in the fate of the motion under discussion. But his personal interest cannot be said to be fairly representative of the general public inter-est in maintaining the conviction already obtained.

Collateral to defendant's personal view, he raises, through counsel, yet a second argument against the grant of the motion. He asks that his trial proceed for the purpose of not only allowing his vindication, but to expose the circumstances which aborted, in some way or another, his pretrial discovery activities. Such an exposure, he argues, will discourage further instances of this type which might lead to unfair indictments and convictions involving other members of our society.

The record of proceedings to this point shows beyond per adventure that the court perceives that an explanation is due concerning why the difficulties complained of occurred. This view is precisely the reason behind the court's request that the matter be the subject of a grand jury inquiry. It is this court's opinion that the grand jury is the preferred and proper forum for such action particularly when that inquiry is being pursued by an independent section of the Department of Justice, the Office of Professional Responsibility. Absent such an investigation and the intervention of the federal grand jury, the decision concerning the government's motion might well be a different one. The court is satisfied that, given the fact that this inquiry is presently being conducted, the public interest in that regard is not diminished by granting the motion to dismiss.

Lastly, there is an additional concern in the realm of public interest, one which has not been the focus of argument by counsel. The public does have an interest in upholding defendant's conviction which resulted from the production of substantial evidence and which was affirmed on appeal. The gathering of such evidence was the product of intense and diligent effort on the part of investigating personnel. The indictment and conviction resulted from the honest effort on the part of grand and petit jurors respectively. Each effort was assisted by the work of Strike Force counsel. The working men and women whose monies were expended on the scheme, as clearly

shown to have existed by the evidence during Mr. Friedman's trial, have a real and personal interest in the conviction of one who illegally received such monies. All of this is of considerable import when one considers the government's present position, that the information sought to be discovered is not truly exculpatory in nature and is not likely to lead to the defendant's acquittal if the case is retried.

This facet of the case causes the court substantial difficulty in adhering to the doctrine of separation of powers. To defer to the discretion of the executive branch under such circumstances is a true constitutional test.

Considering the totality of the arguments given and discussed above, the salient fact remains. There is nothing of substance in the record before the court which would permit a finding that the government is not acting in good faith in advancing its motion to dismiss. As heretofore suggested, proper decisional analysis cannot be built upon the sand of guesswork, speculation or rumor. It is decided, therefore, that under the circumstances presented, the court must properly yield to the discretion of the prosecution—a discretion entrusted to the executive branch by constitutional grant—and give approval to the motion for dismissal. While it has been recognized that in every criminal proceeding there is a public interest in a result which promotes the goal of a well-ordered society, *United States v. Cowan,* 524 F.2d at 510, it must also be acknowledged that this particular interest should give way when there exists a broader public interest to protect. *Rinaldi v. United States,* 434 U.S. at 30, 98 S.Ct. at 85–86, 54 L.Ed.2d at 214. The public interest in effective law enforcement assisted by the utilization of an informant privilege must be deemed such a broader public interest. *Roviaro v. United States,* 353 U.S. at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644. The court has allowed a sufficiency of time to bring forth such information, but finds no facts in the record to truly rebut the legal presumption of good faith exercised by the government in offering the motion to dismiss. It must

be remembered that the test to be applied in judging the prosecutorial effort is not whether such action is taken in the public interest, but whether the record discloses that the action may be characterized as clearly contrary to the manifest public interest. *Rinaldi v. United States,* 434 U.S. at 30, 98 S.Ct. at 85–86, 54 L.Ed.2d at 214 (citing *Cowan* ).

## V

In summary, the presumption of the law is that the government's motion is made in good faith. Nothing appears in the record to rebut that presumption..

The government has articulated valid and judicially recognized reasons as foundations for its motion. Nothing in the record suggests that they are pretextual in nature or untrue.

The defendant agrees with the general principle that, absent very special circumstances, the court cannot force the government to actually go to trial on this matter, even if the defendant's requests were granted.

The public interest is well served here by the grand jury inquiry referred to. That investigation, protected as it is with the secrecy which encourages full consideration of material facts, serves to protect the public interest as well as or better than normal criminal discovery.

The dismissal sought is one with prejudice which frees the defendant from any possible harassment in regard to reindictment on the same charges in the future. In addition, the fact of the dismissal with prejudice may well result in Mr. Friedman's use as a material government witness in any further proceedings in regard to the activities of others pertaining to the "ghost employee" scheme, another matter of valuable public interest.

Under all of the circumstances related, this court is of the opinion that it has no valid option other than the granting of the motion to dismiss.

Accordingly, the government's motion to dismiss is granted. The indictment against Allen Friedman is dismissed with prejudice. This being so, the requests for discovery are moot and are not discussed further.

IT IS SO ORDERED.