STATE of Minnesota, Respondent,

v.

**Von Shane AUNE, Appellant.**

No. C1–83–698.

Supreme Court of Minnesota.

Feb. 22, 1985.

Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

SIMONETT, Justice.

Defendant was charged with seven counts of transferring stolen property, Minn.Stat. §§ 609.05 (1984) and 609.53, subd. 1(1) (Supp.1981) (amended 1982 and 1984), based on his role in selling stolen property on seven different dates in 1981 and 1982 to undercover officers running a so-called "sting" operation. Subsequently, defendant was charged in Federal District Court with engaging in the business of dealing in firearms without a license and conspiring with five other people to engage in the business of dealing in firearms without a license. Defendant pleaded guilty in federal court to the conspiracy charge and was sentenced to 3 years in prison. Thereafter, he moved to dismiss the state charges on the ground that under Minn. Stat. § 609.045 (1982) (amended 1983) his federal conviction barred further prosecution on the state charges.[1] The trial court denied the motion to dismiss. Defendant waived his right to a trial by jury and submitted the issues of his guilt of the charged offenses to the court on a stipulated record. After finding defendant guilty as charged, the trial court, using the *Hernandez* method to compute defendant's criminal history scores,[2] sentenced defendant to prison terms of 30, 34, 25, 32, 41, 65 and 41 months in prison, with the terms running concurrently with each other and

1. Minn.Stat. § 609.045 (1982) provides, "If an act or omission constitutes a crime under both the laws of this state and the laws of another jurisdiction, a conviction or acquittal of such crime in the other jurisdiction bars prosecution for the crime in this state." Defendant initially based his motion also on other grounds, including the state and federal constitutions, but at the hearing on his motion stated that he was abandoning all but the defense provided him by section 609.045.

2. *See State v. Hernandez,* 311 N.W.2d 478 (Minn. 1981), and Minnesota Sentencing Guidelines and Commentary II.B.101 (1983).

with previously imposed sentences.[3] Defendant's appeal raises two issues: one, should six of defendant's state convictions be reversed outright on the ground that they were barred by Minn.Stat. § 609.045 (1982); two, should defendant's sentence be modified on the ground that the conduct underlying some of the convictions resulting in a maximum sentence of 65 months pursuant to the *Hernandez* rule was conduct on which the federal conspiracy conviction was in part based. We affirm.

Defendant made a large number of sales, not all of which were relied upon in the state prosecution:

(1) On September 15, 1981, he and an accomplice sold two firearms to an undercover officer of the Bureau of Alcohol, Tobacco and Firearms in Hennepin County.

(2) At 3:00 p.m. on September 23, defendant and an accomplice sold two more guns to the federal officer in Hennepin County. This sale was *Overt Act I* mentioned in the federal conspiracy charge.

(3) At 4:00 p.m. on September 23, defendant sold a large number of cameras, stereo equipment, televisions, and tapes to a federal undercover officer participating in a store-front "sting" operation conducted by federal and local officers in Ramsey County. Defendant sold no guns on this occasion. This transaction formed the basis of *Count I* of the Ramsey County complaint.

(4) On September 25, defendant and an accomplice sold four guns to federal and local officers at the Ramsey County storefront operation.

(5) On October 1, defendant and an accomplice sold two more guns to the two officers at the store-front operation.

(6) On October 12, defendant and an accomplice sold three more guns to an officer in Ramsey County. This transaction was *Overt Act II.*

(7) On October 30, defendant sold four items, none of them guns, to the local officer in Ramsey County. This transaction formed the basis of *Count II* of the Ramsey County charges.

(8) *Overt Acts III and IV* consisted of the conduct of coconspirators occurring on November 2.

(9) On December 2, defendant and two accomplices sold seven guns to the two officers in Ramsey County. This sale formed the basis of *Count III* and *Overt Act V.*

(10) On January 11, 1982, defendant and an accomplice sold two guns, two televisions, and a microwave oven to the federal officer in Ramsey County. This entire transaction formed the basis of *Count IV,* and the sale of the guns was *Overt Act VI.*

(11) On January 13, defendant and an accomplice sold two guns and four other items to the federal officer in Ramsey County. This transaction formed the basis of *Count V.*

(12) On January 15, 1982, defendant and an accomplice sold three guns and two other items to the federal officer in Ramsey County. This transaction formed the basis of *Count VII* and *Overt Act VII.*

(13) On February 11, defendant sold a truck to the local officer in Ramsey County. This formed the basis of *Count VI.*

(14) On March 3, defendant and an accomplice sold two guns and two other items to the federal officer in Ramsey County.

(15) On March 8, defendant and an accomplice sold four guns and three other items to the federal officer in Ramsey County.

3.

| Count I: | 30 months (severity level VI, criminal history two) |
| Count II: | 34 months (severity level VI, criminal history three) |
| Count III: | 25 months (severity level IV, criminal history four) |
| Count IV: | 32 months (severity level IV, criminal history five) |
| Count V: | 41 months (severity level IV, criminal history six) |
| Count VI: | 65 months (severity level VI, criminal history six or more) |
| Count VII: | 41 months (severity level IV, criminal history six or more) |

(16) On March 11, defendant and an accomplice sold nine guns and a television to the federal officer in Ramsey County.

(17) *Overt Act VIII* involved conduct of coconspirators on March 12.

In summary, defendant was charged with seven counts of transferring stolen property for transactions occurring on September 23, October 30, and December 2, 1981, and January 11, January 13, January 15, and February 11, 1982. Three of these sales (September 23, October 30 and February 11) involved no guns, three of them (January 11, 13 and 15) involved some guns, and one of them (December 2) involved only guns. The four counts involving sale of guns were Counts III, IV, V and VII. Count III was based completely on the sale of seven guns, a sale that was identified in the federal conspiracy indictment as Overt Act V; Count IV was based in part on the sale of guns, a sale identified as Overt Act VI; Count V was based in part on the sale of guns, but that sale was not referred to in the federal indictment; Count VII was based in part on the sale of guns, a sale identified as Overt Act VII. Defendant sought to dismiss all counts except Count VI, based on a sale that involved no guns. As we stated earlier, the trial court denied the motion to dismiss.

1. Defendant recognizes that the double jeopardy clause of the Federal Constitution, as interpreted by the United States Supreme Court, does not bar any of his convictions. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (holding that double jeopardy clause did not bar state conviction of defendant for robbing bank even though conviction was based on the same conduct as federal robbery charge of which defendant was acquitted; by one act the defendant committed offenses against two different sovereignties and he is justifiably subject to punishment for each offense); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (companion case; double jeopardy clause does not bar federal prosecution for conspiring to destroy property following state conviction for same offense

based on same act). *Bartkus* and *Abbate* were reaffirmed in *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam).

■ The United States Department of Justice apparently has an internal policy allowing a subsequent federal prosecution only if there is a compelling basis for it and the prosecutor obtains prior approval from the Assistant Attorney General. This policy, known as the *Petite* policy after the United States Supreme Court case that first noted it— *Petite v. United States*, 361 U.S. 529, 531, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960)—is an internal rule of the Justice Department and may not be invoked by the defendant, only by the federal government. *Rinaldi*, 434 U.S. at 32, 98 S.Ct. at 86 (holding that federal district court abused discretion in denying government motion to vacate conviction because the prosecutor violated the *Petite* policy); *United States v. Hadley*, 671 F.2d 1112, 1116 (8th Cir.1982) (defendant relying on *Petite* policy may not obtain dismissal over objection of government).

In 1971 the drafters of the proposed Federal Criminal Code submitted a final draft containing sections which, if adopted, would provide that a federal prosecution would bar a subsequent state prosecution (1) where the federal prosecution resulted in an acquittal or a conviction or was a "barring termination" and the subsequent state prosecution is based on the same conduct or arose from the same criminal episode unless (a) the federal statute was intended to prevent a substantially different harm from the state statute or (b) the second offense was not consummated when the federal trial began; or (2) where the federal prosecution resulted in an acquittal or judgment for the defendant and necessarily required a determination inconsistent with a fact or a legal proposition which must be established in order to obtain a conviction of the state offense. National Comm'n on Reform of Federal Criminal Laws, Final Report: A Proposed New Federal Criminal Code § 708 (1971). Section 707 of the proposed code deals with the

situation where a former prosecution in another jurisdiction bars federal prosecution.

A number of states provide their defendants with some form of protection against state prosecution following federal prosecution.

(a) In a few states, courts have held that the state constitution provides protection. For example, the Michigan Supreme Court has held that the Michigan Constitution prohibits a state prosecution for an offense arising out of the same criminal act unless it appears that the interests of Michigan and the jurisdiction that first prosecuted the defendant are significantly different. *People v. Cooper*, 398 Mich. 450, 247 N.W.2d 866 (1976) (holding that acquittal of federal bank robbery charges barred defendant's subsequent state convictions of bank robbery and assault with intent to rob while being armed). The cases are collected in Annot., 6 A.L.R. 4th 802, 807–14 (1981 and Supp.1984).

(b) Over 20 states have statutes on the subject. Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* 1512 (5 ed. 1980). These statutes vary considerably in the scope of protection they provide. *Id.* Montana's statute gives the broadest protection, protecting against state prosecution for any offense arising out of the "same transaction" as the previously-tried federal offense. *Id;* Mont.Code Ann. §§ 46–11–504 (1983). The New York statute prohibits prosecution for a state offense arising from the same "act or criminal transaction," but creates several exceptions. Kamisar, *supra* at 1512; N.Y.Crim. Proc.Law § 40.20 (McKinney 1981 and Supp.1984–85). A number of state statutes use a *Blockburger*-type of test, named after *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which established the basic test for determining whether two offenses are the same offense for double jeopardy purposes.[4] These statutes prohibit a state prosecution on the basis of the same conduct unless each prosecution requires proof of a fact not required in the other. Kamisar, *supra* at 1512. Other state provisions bar state charges based on the same "act or omission." *Id.* The cases interpreting and applying these statutes are collected in Annot., 6 A.L.R. 4th 802, 816–24 (1981 and Supp.1984).

(c) Under the Model Penal Code, a subsequent state prosecution would be barred in two circumstances: (i) when the state prosecution is based on the same conduct, unless the offense requires proof of a fact not required in the federal prosecution (the *Blockburger* test) and the law defining each offense is intended to prevent a substantially different harm or unless the second offense was not consummated when the former trial began; and (ii) when the federal prosecution was terminated in the defendant's favor in a manner which necessarily required a determination inconsistent with a fact that must be established for conviction of the state offense. Model Penal Code § 1.10 (1962).

The Minnesota statute on which defendant relies is Minn.Stat. § 609.045 (1982) (amended 1983), which provides, "If an act or omission constitutes a crime under both the laws of this state and the laws of another jurisdiction, a conviction or acquittal of such crime in the other jurisdiction bars prosecution for the crime in this state." Defendant argues that this statute should be given a broad reading to bar a state prosecution for any crime arising out of the same course of conduct as a previously prosecuted federal charge that has resulted in a conviction or an acquittal. The state argues that a state prosecution is barred only if the state crime is the "same

**4.** "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). For a discussion of the *Blockburger* rule, *see State v. Gant,* 305 N.W.2d 790, 793 (Minn.1981) (court must look at the statutory definitions rather than the facts in a particular case; if one offense is necessarily included in another, then the two offenses are the same under the rule).

crime," in the *Blockburger* sense, as the previously-prosecuted federal crime.

■ Section 609.045 is simply a rewording of a statute that has been on the books for many years. History and Source of Law, 40 Minn.Stat.Ann. § 609.045 (West 1964). We have not found any cases of this court explicitly interpreting either section 609.045 or the predecessor versions. However, in *Lupino v. State*, 285 Minn. 507, 171 N.W.2d 710 (1969), this court, without citing the statute, in effect applied the *Blockburger* rule in the context of a state prosecution following a federal conviction based on the same conduct. Lupino was convicted in federal court of the federal offense of fleeing Minnesota to avoid prosecution for the kidnapping and murder of one Anthony DeVito; he was subsequently convicted in Minnesota of kidnapping DeVito. Rejecting defendant's post-conviction contention that the state prosecution was barred on double jeopardy grounds, we stated that the plea of former jeopardy would protect a defendant in such a situation only if the second prosecution was for the same act and the state crime and the federal crime were the same both in law and in fact. We believe that the statute, although not mentioned in *Lupino*, requires the result that was reached there. That is, we believe that the statute envisions a *Blockburger*-type standard.

Although we believe that the statute is sufficiently clear in this respect, we also believe that our interpretation is strongly supported by a number of other factors:

First, this is the way courts in other jurisdictions have construed statutes that are not as clear as ours. *See, e.g., State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982) (interpreting statute providing that it is a defense to a state prosecution that the defendant has been acquitted or convicted in a criminal prosecution in another jurisdic-

tion that was "founded upon the same act or omission"), and *People v. Belcher*, 11 Cal.3d 91, 113 Cal.Rptr. 1, 520 P.2d 385 (1974) (statute similar to Arizona statute interpreted in *Poland*).

Second, if the legislature had wanted to use in section 609.045 the same kind of approach that it used in section 609.035, it presumably would have used the same sort of broad language that it used in section 609.035, since the two statutes were adopted at the same time.[5]

Thirdly, if the legislature had wanted to use a standard other than the *Blockburger* test but not as broad as that used in section 609.035, it presumably would have used one of the formulations then receiving widespread attention, *e.g.*, the formulation of the Model Penal Code.

Fourth, in 1983, the legislature passed what we believe was intended to be a clarifying amendment to section 609.045, rather than an amendment that changes the meaning of the provision. As amended by 1983 Minn.Laws, ch. 152, § 1 (Eff. August 1, 1983), the statute now reads, "If an act or omission in this state constitutes a crime under both the laws of this state and the laws of another jurisdiction, a conviction or acquittal of the crime in the other jurisdiction shall not bar prosecution for the crime in this state unless the elements of both the law and fact are identical." The fact that it uses language similar to that used in the *Lupino* case and the fact that the law now clearly is what this court held it was in *Lupino* suggests that the amendment should be viewed only as a clarifying amendment.

■ We conclude, therefore, that the *Blockburger* approach should be used and that under this approach none of defendant's seven convictions was barred by his federal conspiracy conviction.

---

5. Minn.Stat. § 609.035 (1982) (amended 1983) provides:

Except as provided in Section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts.

■ 2. Defendant's remaining contention is that, even if all seven convictions were proper, it was improper to use two of them (for Counts III and IV) in computing defendant's criminal history score pursuant to the *Hernandez* rule. Defendant bases this on the fact that Counts III and IV were based specifically on sales that were listed in whole or in part as Overt Acts in the federal conspiracy indictment and therefore the same conduct was used to obtain defendant's federal conviction and used again to enhance defendant's ultimate sentence under the *Hernandez* rule. In fact, Count VII was also based on sales listed in part as an Overt Act in the federal conspiracy indictment and therefore defendant's argument should also include Count VII. We also note that if there were any merit to the general contention underlying the defendant's argument, the remedy would not be to ignore the three state convictions in computing defendant's criminal history score; rather, the remedy would be to ignore the federal conspiracy conviction. This is because the wrong would not be in using all three of the state convictions but in also using the federal conviction to increase the defendant's criminal history score. We conclude, however, that there is no merit to the general contention underlying the defendant's argument. The federal conspiracy conviction was based not just on conduct on which some of the state convictions were based. It was based also on conduct not forming the basis of any of the state convictions, conduct which by itself provided a sufficient basis for the federal conviction.

Affirmed.