*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1773**

State of Minnesota,
Respondent,

vs.

Jason Lonny Spillum,
Appellant.

**Filed December 15, 2014
Affirmed
Connolly, Judge**

Polk County District Court
File No. 60-CR-10-1003

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Gregory Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Renee Bergeron, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges his convictions for conspiracy, first-degree controlled-substance crime—sale, and failure to affix a tax stamp, arguing that his uncorroborated confession was not sufficient evidence to establish his guilt, that his prosecution in Minnesota violated double jeopardy, and that the prosecutor engaged in vindictive prosecution. Because appellant's confession was corroborated by sufficient evidence, neither constitutional nor statutory double-jeopardy provisions preclude his convictions, the vindictive-prosecution claim is not properly before this court and in any event is without merit, and his pro se claims are also without merit, we affirm.

## FACTS

In February 2009, in Grand Forks, North Dakota (ND), appellant Jason Spillum sold a confidential informant (CI) a gram of cocaine, for which the CI paid appellant $200 in marked bills. ND police officers searched appellant's apartment and found five bags, each containing between 1.35 grams and 3.05 grams of a substance later determined to be cocaine. Appellant pleaded guilty to ND charges of delivery of cocaine and of possession of cocaine with intent to deliver.

Appellant told the ND police officers investigating this incident that he had been selling about 3.5 grams of cocaine per week for about a year, that he usually bought 14 grams every couple of weeks, that his supplier was R.C., who lived in East Grand Forks, Minnesota (MN), and that appellant did not know who supplied R.C. Appellant added that he hated himself for reporting R.C., a lifelong friend.

2

During the interview, appellant received a message on his phone from R.C. The message indicated that R.C. knew the police had come for appellant and asked appellant if his child support was unpaid. Appellant told the officers that he had monthly child-support payments of $1,403 and was usually behind. The ND police told MN police what they had learned from appellant about R.C.

When the MN police searched R.C.'s residence, they found the marked bills that appellant had received from the CI. R.C. was charged with conspiracy, first-degree controlled-substance crime—sale, and failure to affix a tax stamp. Because appellant agreed to testify against R.C., respondent State of Minnesota (the state) agreed not to charge him.

In May 2010, on the day R.C.'s trial was scheduled to begin, appellant recanted his statement to the ND police, denied that R.C. supplied him with cocaine, and refused to testify against R.C. The state dismissed the complaint against R.C. and charged appellant with one count of conspiracy, one count of first-degree controlled-substance crime—sale (specifically with having possessed ten or more grams of cocaine within a 90-day period between March 1, 2008, and March 15, 2009, i.e., prior to the incident in which cocaine was found in his apartment on March 16, 2009), and one count of failure to affix a tax stamp.

In February 2011, appellant entered an *Alford* plea to first-degree controlled-substance crime—sale and was sentenced to 104 months in prison. In 2012, he filed a petition for postconviction relief, seeking to withdraw his *Alford* plea on the ground that his prosecution in MN violated the prohibition of double jeopardy because he had

3

previously been convicted of the same offense in ND. His double-jeopardy argument was rejected, but he was allowed to withdraw the plea on another grounds. The three charges against appellant were reinstated.

A jury found appellant guilty on all three counts. He challenges his conviction, arguing that his confession was not corroborated by sufficient evidence to clearly establish his guilt, that his constitutional and statutory double-jeopardy protection barred his MN prosecution for offenses of which he had been convicted in ND, and that the prosecutor engaged in vindictive prosecution.

**D E C I S I O N**

**1.      Sufficiency of the Evidence**

This court "will not overturn a guilty verdict if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *State v. Hurd*, 819 N.W.2d 591, 598 (Minn. 2012) (quotation omitted). If the direct evidence, viewed in the light most favorable to the state, would permit the jury to reasonably conclude that the state has proven the fact in question beyond a reasonable doubt, the evidence is sufficient to sustain a conviction. *State v. Hokanson*, 821 N.W.2d 340, 353 (Minn. 2012), *cert. denied* 133 S. Ct. 741 (2013). "[An appellate court] may reverse only if no rational jury could have found the essential elements of the crime beyond a reasonable doubt. This standard applies even in cases where a confession dominates the government's proof at trial." *United States v. Kirk*, 528 F.3d 1102, 1111 (8th Cir. 2008) (citation omitted).

4

A defendant's confession is direct evidence of guilt. *State v. McClain*, 208 Minn. 91, 95-96, 292 N.W. 753, 755 (1940). However, uncorroborated confessions of guilt are not sufficient to support a conviction. Minn. Stat. § 634.03 (2012). "Under Minn. Stat. § 634.03, a confession of the defendant shall not be sufficient to warrant a conviction without evidence that the offense charged has been committed. The section has a dual function. It discourages coercively acquired confessions and makes the admission reliable." *In re Welfare of M.D.S.*, 345 N.W.2d 723, 735 (Minn. 1984). But the statute does not require independent corroboration of each element of an offense. *Id.* "[N]ot all or any of the elements ha[s] to be individually corroborated but [can] be sufficiently substantiated by independent evidence of attending facts or circumstances from which the jury may infer the trustworthiness of the confession." *Id.* (quotation omitted).

Appellant relies on *M.D.S.* to argue that the state did not provide adequate corroborating evidence for his confession. In *M.D.S.*, the juvenile defendant was charged with aiding and advising felony murder after being in the car with two men who shot at a home and killed one of the occupants, then shot at a school. *Id.* at 734-35. The corroborating evidence included one witness's testimony that, the day after the murder, the defendant brought him and the two men a newspaper clipping about the murder and discussed hiding the weapon and leaving town and the victim's neighbor's testimony that, on the night of the murder, she saw a car like the car the defendant said had been outside the victim's house. *Id.* at 738. In addition, the testimony of the victim's son and husband that, of the three accused, only the defendant had previously been to their house corroborated the defendant's statement that she gave them the address; glass fragments at

5

the scene corroborated the defendant's statement that she directed one of the men to shoot at the window rather than the door; and damage to a nearby school corroborated the defendant's statement that she suggested they shoot at the school. *Id.* The corroborating evidence was found to be adequate. *Id.*

Appellant also relies on *State v. Heiges*, 806 N.W.2d 1, 13-14 (Minn. 2011) (finding adequate corroborating evidence of the defendant's statements that she had been pregnant; she had tried to end her pregnancy; she planned to kill the baby after delivery; she delivered the baby in the bathtub; the baby's father threatened to hurt her, as he had in the past, if she did not drown the baby; she drowned the baby, put its body in a shoebox, and threw the shoebox down the apartment garbage chute; and, when she was later in a despondent state, she cut her wrists in the bathtub). The state's evidence included: (1) testimony from employees at the apartment building that the defendant at first wore fitted clothing, began wearing loose clothing, and after May 2005 wore fitted clothing again and that she gained weight prior to May 2005; (2) testimony from an acquaintance that the defendant had said she was trying to abort the baby by drinking full bottles of alcohol and using drugs, that the baby's father punched her in the stomach in an effort to end the pregnancy, and that she planned to deliver the baby in northern Minnesota, kill it, and bury it in the woods; (3) testimony from a forensic scientist that the blood in the bathroom could have come from appellant, the baby's father, or their child, and that 75.5% of the population could be excluded as sources of the blood; (4) testimony from one of the defendant's classmates that bruises had been seen on the defendant and from another that the baby's father had been seen throwing things at her

and abusing her; and (5) testimony from the baby's father that the defendant came into their bedroom naked and wet, said, "it's done," and, a few days later, tried to commit suicide; and testimony that there was a garbage chute in the apartment. *Id.*

Appellant tries to distinguish *M.D.S.* and *Heiges*, but the corroborating evidence offered here was similar to the evidence offered in those cases. "[T]he quantity and type of independent evidence necessary to corroborate a confession depends upon the facts of each case. Corroborative facts may be of any kind, so long as they tend to produce confidence in the truth of the confession. Thus, circumstantial evidence may justify a jury's inference that a defendant's statement is true." *Kirk*, 528 F.3d at 1112 (quotations and citations omitted).

Most significantly, the fact that the marked bills that the CI gave appellant in ND in exchange for cocaine were found in the MN residence of R.C. corroborated appellant's statements that he knew R.C., purchased cocaine from him, and used money obtained from selling cocaine to pay R.C. for more cocaine. Appellant's relationship with R.C. was further corroborated by the text message R.C. sent to appellant's phone while appellant was in custody on March 16, 2009, as did the fact that R.C. and his family lived in East Grand Forks, MN. Testimony from two witnesses who had purchased cocaine from R.C. during 2000 and 2001 corroborated appellant's statement that he and R.C. had sold cocaine together around that time.

Appellant's guilty pleas in ND provided further corroboration. Adequate corroboration for a confession may be provided by "'appearing in court and making a further solemn and unequivocal admission not only of *[c]orpus delicti*, but also of

personal guilt.'" *State v. Plagman*, 265 Minn. 274, 276-77, 121 N.W.2d 621, 623 (1961) (quoting *McClain*, 208 Minn. at 95, 292 N.W. at 754). Appellant pleaded guilty to delivering approximately one gram of cocaine to the CI in exchange for $200 in Grand Forks on February 25, 2009; this corroborated his statements that he had been selling cocaine for about a year and had sold cocaine to the CI. He also pleaded guilty to possessing, in Grand Forks on March 16, 2009, approximately 11 grams of cocaine that he intended to deliver to others; this corroborated his statements that he sold cocaine to others, and the drug paraphernalia and drug-related items found in appellant's Grand Forks residence provided additional corroboration.

Appellant argues that the corroborating evidence here is merely "peripheral or incidental details." But the presence of the marked bills appellant received from selling cocaine in the home of appellant's cocaine supplier was more than peripheral to appellant's dealings in cocaine, and his guilty pleas to cocaine-related charges were more than incidental to his statements about the events leading to the charges. Appellant also argues that R.C. could have acquired the marked bills by selling appellant something other than cocaine, but nothing in the record supports this argument.

The direct evidence of appellant's statements, together with the corroborating evidence, when viewed in the light most favorable to the state, "would permit the jury to reasonably conclude that the [s]tate has proven the fact in question beyond a reasonable doubt, [and] the evidence is sufficient to sustain a conviction." *Hokanson*, 821 N.W.2d at 353.

8

**2.     Double Jeopardy**

Appellant argues that constitutional and statutory double-jeopardy protections prohibited his prosecution in Minnesota. The interpretation of both constitutional provisions and statutes is reviewed de novo. *State v. Castillo-Alvarez*, 836 N.W.2d 527, 533-34 (Minn. 2013).

**A.     Constitutional double-jeopardy protection**

"[T]he Supreme Court has interpreted the Double Jeopardy Clause of the United States Constitution to allow successive state prosecutions when the defendant's act transgresses the laws of both states." *Id*. at 534. This interpretation is based on the principle that

> two sovereigns, each deriving power from independent sources, may both prosecute an offender for a crime arising from the same conduct that violates the laws of each sovereign. In other words, when a single act by an offender transgresses the laws of two sovereigns, he or she has committed two distinct criminal offenses.
> . . . .
> . . . [W]e construe Minn. Const. art I § 7 [the Double Jeopardy clause] to allow successive state prosecutions when the defendant's act transgresses the laws of both states.

*Id*. at 535-36 (citations omitted). Because appellant's acts transgressed the laws of both ND and MN, the federal and state constitutional double-jeopardy clauses did not bar his successive prosecutions in the two states.

**B.     Statutory double-jeopardy protection**

> If an act or omission in this state constitutes a crime under both the laws of this state and the laws of another jurisdiction, a conviction or acquittal of the crime in the other jurisdiction

shall not bar prosecution for the crime in this state unless the elements of both law and fact are identical.

Minn. Stat. § 609.045 (2012). Appellant's ND convictions were for (1) delivery of cocaine, specifically the delivery of one gram of cocaine to the CI in exchange for $200, on February 25, 2009, and (2) possession of cocaine with intent to deliver or manufacture, specifically the presence in his apartment of 11 grams of cocaine on March 16, 2009. In MN, appellant was charged with (1) conspiracy from March 1, 2008, to March 15, 2009; (2) controlled substance crime in the first degree—sale, from March 1, 2008, to March 15, 2009; and (3) failure to affix a tax stamp from March 1, 2008, to March 15, 2009. The first and third MN charges are obviously not identical in law or in fact to the crimes of which appellant was convicted in ND, and the ND convictions therefore do not bar those charges. *See State v. Aune*, 363 N.W.2d 741 (Minn. 1985) (holding that federal conspiracy conviction did not bar state's prosecution on seven counts of transferring stolen property); *see also State v. Heath*, 685 N.W.2d 48, 61 (Minn. App. 2004) (in the context of methamphetamine, holding that "conspiracy to manufacture" and "possession with intent to sell" were not part of the same behavioral incident).

While the MN charge of controlled-substance crime in the first degree—sale, from March 1, 2008, to March 15, 2009, was less obviously different than the other MN charges from the ND charges, it was not identical to them. The ND charges involved selling cocaine on February 25, 2009, and possessing cocaine with intent to sell it on March 16, 2009. The MN charge involved possessing at least ten grams of cocaine

10

within a 90-day period between March 1, 2008, and March 15, 2009, and was based on appellant's March 2009 confession that he had been purchasing cocaine from R.C. weekly or bi-weekly during the past year. Thus, the double-jeopardy protection requirement that "the elements of both law and fact are identical" is not met by appellant's MN and ND crimes. *See* Minn. Stat. § 609.045.

Appellant argues that, because the MN complaint was not amended to change the last day of the time period from March 15, 2009, to March 14, 2009, the MN jury could have convicted him of the same crime to which he pleaded guilty in ND. But the jury was instructed that, "[i]n determining whether the ten-gram threshold has been met for this offense, you cannot consider . . . the quantities of cocaine at [appellant's] residence on or about March 16, 2009 . . . because [he] was already convicted for [that] offense[] . . . in [ND] . . . ." Appellant's trial attorneys did not object to this instruction.

The state did not violate double jeopardy by prosecuting appellant.

**3. Vindictive Prosecution[1]**

Vindictive prosecution is presumed "when a defendant's exercise of a procedural right causes a complete retrial after he had been once tried and convicted." *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006) (quotation omitted). But there is no presumption of vindictiveness in a prosecutor's initial decision to charge, and, "[i]n the

---

[1] We note that this issue is not properly before us both because it could have been, but was not, raised before trial, *see* Minn. R. Crim. P. 10.01, subd. 2, and because it could have been, but was not, raised to the district court, and this court generally does not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). We nevertheless address it in the interest of completeness.

area of pretrial prosecutorial decisions, . . . there is generally no presumption of vindictiveness." *Id*.

Appellant argues that, when he refused to testify against R.C., he was "exercising his procedural right" not to perjure himself, so the decision to charge him was vindictive prosecution. *See id.* But appellant had agreed to testify against R.C. in exchange for the state's agreement not to charge him; having broken his agreement, he had no right to enforce the state's agreement. If appellant lied to the state when he said that R.C. regularly supplied him with cocaine, the state's agreement not to prosecute was based on a lie, and appellant had no right to it. Appellant fails to show that the prosecution was vindictive.[2]

**Affirmed.**

---

[2] Appellant submitted three additional issues in a pro se brief. Our review indicates that none of these issues has merit. Appellant's ineffective-assistance-of-counsel claim fails because it is largely based on matters of trial strategy and this court does not review trial strategy. *See State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009). His claim that evidence of his unpaid child-support obligation was erroneously admitted fails because that evidence was relevant to appellant's claimed need to sell drugs. Finally, his claim that one juror might not have been impartial because that juror might have been related to a woman whom appellant had dated fails because it was based on a posttrial conversation that was not part of the record.