724 F.Supp. 851 (1989)
UNITED STATES of America, Plaintiff,
v.
Avram C. FREEDBERG, Consumer's Marketing Group, Ltd., a corporation, dba Private Showcase Video, Dirty Dick's Dynamite Discount Den and Expose Theatre, Defendants.
No. 88-CR-112G.
United States District Court, D. Utah, C.D.
October 6, 1989.
*852 Richard Lambert, Asst. U.S. Atty., for plaintiff.
Elkan Abramowitz, Herschel Saperstein, Salt Lake City, Utah, for defendants.

MEMORANDUM DECISION AND ORDER
J. THOMAS GREENE, District Judge.
This matter comes before the court on Joint Motion to Dismiss a pending indictment which charges defendants Avram C. Freedberg and Consumer Marketing Group, Ltd. ("CMG") each with 18 counts of mailing obscene matter in violation of 18 U.S.C. § 1461 (and aiding and abetting under 18 U.S.C. § 2 (1984)). In a related case (Case No. CR89-38) CMG pled guilty to a one-count Information and was sentenced by this court to a fine of $500,000. This court is now advised that the fine has been paid and that further proceedings in the Northern District of Mississippi resulted in pleas of guilty by CMG to an Information pending there and to an Information transferred there from the District of Delaware pursuant to Rule 20, Fed.R.Crim.P. CMG was sentenced to a fine of $100,000 as to those charges, and the court is now advised by the filing of the present Joint Motion that all fines have been paid and that the proceedings in the Northern District of Mississippi have been fully completed. Based upon the foregoing, the Indictment in 18 counts which is pending here against CMG, a now defunct and dissolved corporation whose entire inventory of sexually oriented materials has now been confiscated and destroyed, is dismissed.
The pending Indictment in Case No. CR88-112 is not dismissed as against the defendant Avram C. Freedberg.
*853 The Government filed a motion to dismiss all 18 counts against defendant Freedberg and all but one count against CMG which was denied by this court on November 28, 1988, because it was part of an unacceptable plea bargain which was rejected by this court under Rule 11(e) Fed. R.Crim.P. as not in the public interest.[1] On December 22, 1988, under Rule 11(e) the court again denied an amended Rule 48(a) motion by the government to dismiss all charges against both defendants because it was apparent that it was substantially part of the same package arrangement as before, except that it was contemplated that the defendant corporation would plead guilty to one count of mailing obscene material to be contained in a separate Information to be filed against CMG, again without prosecution of its owner and principal, the individual defendant.[2] This plea was to occur in another separate case which the prosecution said would be filed.[3] Thereafter, pursuant to a revised but essentially similar agreement between the government and the defendants, a separate one count Information was filed in this District against CMG only, and the Government filed a Nolle Prosequi as to the original Indictment relative to both defendants. On February 27, 1989, that case which had been assigned to Judge Sam was transferred by him to this court because of similarities with pending Case CR88-112. On May 26, 1989, during the sentencing of CMG in CR89-38, this court again rejected the revised plea bargain agreement as manifestly not in the public interest.[4] The revised *854 agreement in substance and effect was the same agreement which had been twice rejected before. The only substantial variation was a variation as to form. Rather than an outright motion to dismiss the individual defendant Freedberg, the Government had bargained to file a Nolle Prosequi, assuring that the Indictment returned by the Grand Jury in the District of Utah against him would not be pursued.
The government and defendants now jointly urge dismissal of the Indictment in CR88-112 as against the individual defendant Freedberg under Rule 48(a) Fed.R. Crim.P. It is apparent that this represents the final bargained for act to be accomplished as a part of essentially the same plea package previously rejected by the court. Once again, the court rejects the proposed dismissal as an unacceptable condition in a plea bargain arrangement under Rule 11, and once again, the court declines to grant "leave of court" to permit the dismissal under Rule 48(a). This court finds that dismissal of the charges against the individual defendant would be contrary to the manifest public interest under both Rule 11(e) and Rule 48(a) for all of the reasons heretofore spread upon the record.
The Government and the defendants urge that the court is obliged to dismiss the Indictment on three separate grounds.

I.
It is argued that the Indictment must be dismissed as a matter of deference to the executive prerogative of the United States Attorney under Rule 48(a), and pursuant to "principles of separation of powers." In essence, it is submitted in the Joint Motion that the court is without power to refuse to dismiss the indictment because of limited discretion or that such constitutes an unwarranted interference with prosecutorial discretion, and breaches principles of separation of powers. This court disagrees and regards its rejection of the motion to be warranted under both Rule 11 and Rule 48.

Rule 11
Although the present motion purportedly is brought under Rule 48(a), the motion itself is one of the elements and conditions of the same unacceptable plea bargain package thrice before rejected under Rule 11(e).[5] Where the filing of a motion in form under Rule 48(a) is one of the very conditions of a plea arrangement, this court considers that such motion, as well as all other aspects of the plea bargain, continues to be subject to review and discretionary rejection under Rule 11. The fact that the sentencing of the corporate defendant has now been accomplished should not ipso facto make more viable another part of a plea agreement previously found not to be in the public interest. The entire plea agreement, including dismissal of the Indictment or bargained for non prosecution of the individual defendant, was rejected. It is true that completion of sentencing CMG removes the relevance of preservation of sentencing discretion as to the corporate defendant. However, it is apparent that the bargain to dismiss all charges against the individual defendant seriously infringes upon the court's discretion in sentencing and indeed removes all sentencing options from the court. In this regard, the Tenth Circuit cited and quoted with approval the Fifth Circuit case of United States v. Bean, 564 F.2d 700 (5th Cir.1977) which held that Rule 11(e) governs a district court's discretion to reject plea bargains which require dismissal of other charges also before the trial court. In Bean the court said: *855 since the counts dismissed pursuant to plea bargains often carry heavier penalties than the counts for which a guilty plea is entered, a plea bargain to dismiss charges is an indirected effort to limit the sentencing power of the judge.... Because the judge's discretion over the duration of imprisonment is being limited, the standard for review of refusal of plea bargains should be closer to the standards for review of sentencing than for review of a dismissal which does not involve a plea bargain under Rule 48(a).
564 F.2d 700 at 704 (Emphasis added), quoted in Carrigan, 778 F.2d at 1463. Where, as here, the court believes the negotiated plea bargain not to be in the public interest, this court considers and continues to take the position that the plea bargain and its components, including a Motion to Dismiss styled as a Rule 48(a) motion, may be rejected.

Rule 48(a)
Viewed as a Rule 48(a) motion, "leave of court" nonetheless is required in order to effectuate dismissal, and this court has refused to grant such permission because the court believes that it is not in the public interest.[6] This court recognizes that the range of discretion is more limited under Rule 48(a), than under Rule 11(e). In the joint motion before the court, the parties contend that in making the determination that dismissal is not in the public interest the court's range of discretion is extremely narrow and may be applied "only to protect the defendant or to avoid a tainted decision." (Memorandum at p. 9) If the standard indeed is that narrow, the court in this case may be without discretion to refuse dismissal under Rule 48(a) because this court does not find that the motion to dismiss is the result of any improper purpose or motive on the part of the United States Attorney's office. Indeed, it is apparent that the prosecutors deemed the bargain to be in the public interest. Notwithstanding the foregoing, this court considers that rejection of the plea agreement including the motion to dismiss was warranted not only under the broad discretion granted under Rule 11 but under the narrow discretion granted under Rule 48.
In Rinaldi v. United States, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) the Supreme Court noted that Rule 48(a) is primarily intended to protect a defendant from prosecutorial harassment but left open the issue presented by the Joint Motion in this case, i.e., whether a trial court has discretion to deny a motion to dismiss by the government which has the consent of or is jointly presented by the defendant, where the court has found that dismissal would be clearly contrary to the public interest. In this regard, the court said:
The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. (Citations omitted.) ... But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest. See United States v. Cowan, 524 F.2d 504 (CA5 1975); United States v. Ammidown, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (1973). It is unneces- *856 sary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same.
434 U.S. at 29 n. 15, 98 S.Ct. at 85 n. 15 (emphasis added). In United States v. Strayer, 846 F.2d 1262, 1265 (10th Cir. 1988), the Tenth Circuit said:
Rule 48(a) provides, in pertinent part: "[T]he United States Attorney may by leave of the court file a dismissal of an indictment ... and the prosecution shall thereupon terminate." Fed.R.Crim.P. 48(a) (emphasis added). Requiring the government to obtain leave of the court to dismiss an indictment serves two purposes. The primary purpose is to protect a criminal defendant from prosecutorial harassment.... The rule is also intended to allow courts to consider public interest, fair administration of criminal justice and preservation of judicial integrity when evaluating motions to dismiss. United States v. Carrigan, 778 F.2d at 1463; ... (Emphasis added.)
In the prior Tenth Circuit case of United States v. Carrigan, 778 F.2d 1454, 1463 (10th Cir.1985) it was noted that the trial court's discretion is more limited under Rule 48(a) than it is under Rule 11(e), but the court also recognized that under Rule 48(a) the trial court does have discretion and may refuse a prosecutor's Rule 48(a) motion where dismissal is "clearly contrary to manifest public interest."
This court considers the facts of this case to come within the narrow discretion reserved to the courts under Rule 48(a). Rather than the court's action constituting a usurpation of the Executive power and interference with prosecutorial discretion as urged in the Joint Motion, in this court's view the narrow interpretation of "leave of court" as advocated in the Joint Motion and applied in this case would constitute violation of principles of separation of powers because of interference with judicial discretion.[7]

II.
The second ground which is urged to justify granting the motion to dismiss is that any prosecution of the Indictment in Case No. CR88-112 would violate the settlement agreement which was entered into with defendants, and that prosecution now would violate defendant's rights to due process of law. This isn't a situation in which the prosecution has reneged or refused to perform a plea agreement, as postulated in the Joint Motion. If that were the case perhaps violation of defendant's due process rights would be implicated. In the case at bar, the settlement agreement was rejected by this court under Rule 11 on every occasion that it was presented. Moreover, defendants knew from day one that the bargained for plea agreement contemplating *857 the settlement was rejected and unacceptable to the court, that it was ineffectual and that the case should proceed to trial. Whatever may have occurred by way of a change of position or waiver of rights, it was done by defendants voluntarily and with complete knowledge of the consequences.[8] As a matter of evidence at trial, admissions and certain other evidence which may have been learned in the course of the plea bargaining likely would be inadmissible. Under these circumstances, defendants cannot complain of violation of due process rights.

III.
The final reason urged in support of the Joint Motion is that the Speedy Trial Act requires dismissal. At a hearing on the matter the court found, and counsel for defendants recognized, that to call the case for trial would be a useless act[9] because defendants really did not want a trial and because defendants and the government had agreed that there should be no trial.[10] It is the view of this court that the Speedy Trial Act does not apply in these circumstances.
For the reasons set forth above, this court denies the Joint Motion to Dismiss as to defendant Avram C. Freedberg.
IT IS SO ORDERED.
NOTES
[1] Minute Entry November 28, 1988, Case No. CR88-112.
[2] At the November 28, 1988 and December 22, 1988 hearings, and at other hearings, the court found the attempted dismissal under Rule 48(a) to be inextricably linked to an overall plea agreement which was manifestly contrary to the public interest under Rule 11(e) for the following reasons:

1. Public confidence in the administration of justice will be eroded if it is perceived that when an individual who operates illegally through a corporation can escape prosecution altogether and retain the fruits of his ill gotten gains by having the corporation "take the rap." This is especially true where the individual defendant is the owner, principal and alter ego of the corporate defendant.
2. Dismissal of all charges against the individual defendant should be considered separately on the merits and not as a part of a package contingent upon sentencing and fines to be imposed on the corporate defendant in this and other districts.
3. The government had just prosecuted another defendant and his corporation in this court before this judge in a highly publicized case of lesser magnitude for the same offenses and had urged at sentencing imprisonment of the individual defendant, which sanction in fact was imposed by the court. USA v. Winkler, Case No. CR88-113G. Such disparity of position by the government as to identical charges can erode public confidence in the system.
4. The parties had agreed that prosecutions in three separate states could result in a total fine not to exceed $600,000 as against the corporate defendant, even though potential fines otherwise could have been imposed in the range of 9 million dollars for each defendant.
5. The government proposed to grant full immunity to all employees and persons who had operated the illegal activities of the corporation.
6. The matter was presented by the prosecution to a Federal Grand Jury which returned unconditional Indictments against both defendants.
7. Although it was urged that the settlement arrangement would remove trial uncertainties and had caused dismissal of a civil suit against the government, the prosecution admitted that there was no lack of evidence and that in the view of the government defendants had not raised valid legal defenses.
[3] This judge noted that in spite of total confidence in every other District Judge in this District who might be assigned a new case under the random rotational system, the perception of forum shopping could now exist as an additional factor that would be contrary to the public interest. Hearing transcript, dated December 22, 1989, p. 31.
[4] Hearing Transcript dated May 26, 1989, in Case No. CR89-38, p. 19. In addition to prior reasons for rejecting the plea agreement, as a result of a presentence report prepared by the U.S. Probation Department as ordered by the court at the time of entry of the plea, as well as testimony by the individual defendant at the time of sentencing, it was revealed that the maximum fine agreed upon by the government was far short of the lucrative gains enjoyed by the defendants before being caught and agreeing to quit the business. Defendant Freedberg testified that he received income from CMG's sexually oriented business in 1987 of at least $800,000 and that in 1988 he received in addition to a $350,000 salary "many hundreds of thousands of dollars more." Tr. p. 10. Under these circumstances, the maximum fine of $500,000 imposed by the court, although reportedly the largest fine imposed nationwide in such a case, may have represented only a modest portion of the ill-gotten gains.
[5] In United States v. Carrigan, 778 F.2d 1454, 1462 (10th Cir.1985) the court concluded under the facts presented that the proceeding was controlled under Rule 11(e) rather than under Rule 48(a) as was urged by the government, and said:

While "[t]he procedures of Rule 11 are largely for the protection of criminal defendants ... Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that bargain is too lenient, or otherwise not in the public interest."
(Quoting United States v. Miller, 722 F.2d 562, 563 (9th Cir.1983)).
[6] The granting of "leave of court" is not a mere "rubber stamp" procedure, since the court has a duty to protect the public interest. That duty is especially significant where, as here, a Grand Jury Indictment has been returned, rather than prosecution by way of Information. United States of America v. N.V. Nederlandsche Combinatie Voor Chemische Industries, et al., 428 F.Supp. 114, 116 (S.D.N.Y.1977); United States v. Bettinger, 54 F.R.D. 40 (D.Mass.1971); United States v. Doe, 101 F.Supp. 609 (D.Conn.1951). In Nederlandsche, the court said that courts are "vested with the responsibility of protecting the interests of the public on whose behalf the criminal action is brought." 428 F.Supp. at 116.
[7] In United States v. Cowan, 524 F.2d 504, 513 (5th Cir.1975), cited by the Tenth Circuit in the Carrigan case, the Fifth Circuit Court said:

... it seems altogether proper to say that the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. But this is not to say that the Rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.
(Holding that trial court exceeded bounds of discretion in refusing to dismiss Texas indictment where government had formally declined to proceed in a case involving negotiation for plea of guilty to one count in another district and full disclosure of matters pertaining to Watergate investigation. In the case at bar, the government bargained for a plea of guilty by the corporation to one count in each of three districts, with total dismissal of all charges against the individual defendants.)
[8] In United States v. Ocanas, 628 F.2d 353, 358 (5th Cir.1980) cert. denied, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 the court said:

[T]he realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court. (emphasis added)
See also United States v. Alvarado-Arriola, 742 F.2d 1143, 1145 (9th Cir.1984); U.S. v. McGovern, 822 F.2d 739, 743-44 (8th Cir.1987).
[9] On February 8, 1989, after the parties had requested the court to vacate and continue the existing trial setting of February 8, 1989, this court ordered that the computation of time under the Act be tolled until the case could be reset. It then became apparent at the hearing on February 22, 1989, that the parties had agreed that it should never be reset.
[10] At the hearing on February 22, 1989, the following colloquy occurred with counsel:

Mr. Abramowitz: Your Honor, my view is in the circumstances of the procedural history of this case whether today is a scheduling conference or a day set for trial, the Government has indicated twice orally and in writing that they will not prosecute the case, so that it would be a mere formality to say that the next time we get together is a date for trial.
* * * * * *
The Court: ... I just want to know whether it's a useless act for me to set the case for trial. Do you intend to try the case?
Mr. Abramowitz: Not if the Government doesn't try it, I'm not going to try it.
* * * * * *
Mr. Abramowitz: No tricks. I just don't want to have  it's unnecessary to waste the Court's time with additional hearings when we know what the outcome is going to be, that's the point.
The Court: All right. The Court finds that it would be a useless act to set this case for trial under the present state of the record.
* * * * * *
The Court: ... I do not consider that the Speedy Trial Act time is running because I've excluded it and I'm not going to set the case for trial because it's obvious that there is no point in setting this case for trial ...
Tr. pp. 9, 12, 13, 14.