**UNITED STATES of America**

v.

**Howard Kenneth SMITH, Jr.**

No. 6:93CR57–2.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

May 27, 1994.

David Smith, Asst. U.S. Atty., Greensboro, NC, for plaintiff.

Locke T. Clifford, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

The Government has moved, pursuant to Rule 48 of the Federal Rules of Criminal Procedure, for leave of Court to file an order dismissing the indictment against Howard Kenneth Smith, Jr. This motion implicates and requires an analysis of the Court's limited authority to evaluate a motion to dismiss under Rule 48. For the reasons discussed herein, the Government's motion to dismiss is DENIED.

### I.

James Martin Brammer, Howard Kenneth Smith, Jr., Walter Scamman Jordan, and several other individuals were charged in an indictment, case number 6:93CR57, returned by the grand jury on March 25, 1993. The indictment charged that from fall, 1987 through June 1989, these individuals conspired to possess with intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Another indictment, case number 6:93CR58, was returned by the grand jury on March 29, 1993 (a superseding indictment in 6:93CR58 was returned on April 29, 1993). This indictment charged that from late 1986 through December, 1992, Curtis Bennett Terry and six other individuals entered into a conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

Terry pled guilty on June 10, 1993, and pursuant to his plea agreement, agreed to assist the government by providing information and testimony on behalf of the United States. Following his plea, Terry cooperated with agents of the Organized Crime Drug Enforcement Task Force (OCDETF) regarding his involvement in drug distribution, and was "extremely candid and complete" and "truthful and accurate." (Government's Motion Pursuant to 18 U.S.C. § 3553(e) and § 5K1.1.) Terry agreed to testify against another individual charged in the same indictment, but his testimony became unnecessary when the defendant plead guilty. Terry agreed to and did in fact testify on behalf of the Government in a related case, *United States v. Brammer*, 6:93CR57.

The *Brammer* trial commenced on July 12, 1993, with the selection of a jury for the Government's prosecution of Brammer, Smith, Jordan and three other defendants. The trial of another defendant, Michael Gregory Ingino, was severed with the expectation that he would be tried at a later date. During the course of the *Brammer* trial, Jordan made a motion pursuant to *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Following a hearing on the motion, the Court entered an Order dismissing the indictment as to Jordan. (*United States v. Jordan*, 6:93CR57-3, Order, July 20, 1993).

At the conclusion of the government's case-in-chief, which included testimony from Terry and Jordan implicating Smith in the conspiracy, Smith decided to enter into a plea agreement, and to assist the government. The Government re-opened its case to present Smith's testimony to the jury. Pursuant to his plea agreement, Smith agreed to cooperate and provide truthful testimony, with the anticipation that the government would make a motion for "substantial assistance," which would result in a reduction in his sentence. (Draft, Trial Transcript, *United States v. Brammer*, 6:93CR57, testimony of Smith, section II, at 7–8).[1]

---

1. Hereinafter cited as "Tr. (Witness Name) at page #." At the present time, only drafts of the

Evidence adduced at trial indicated that Terry had met Smith in 1982 or 1983, and in the course of their association, a cocaine relationship developed. (Tr. Terry at 7.) During the time period from 1987 to 1989, Terry bought quarter and half ounces of cocaine from Smith on six or eight occasions. Terry testified that he went to Smith's house to buy cocaine, and that while there, he saw scales, cut, and large amounts of money. (Tr. Terry at 13.)

Smith testified that he met James Brammer in the summer of 1987, and began selling him cocaine in July, 1987. (Tr. Smith I at 2–3). Smith testified that between July and August, he sold Brammer between eight and ten ounces of cocaine, four or five transactions of two ounces in each transaction. (Tr. Smith I at 4). Brammer corroborated this testimony by stating that he purchased cocaine from Smith for himself and his brother-in-law. (Tr. Brammer at 4).

Walter Jordan's testimony at trial indicated that during his association with Smith, a cocaine relationship developed. Jordan testified that he sold Smith ten eight-balls of cocaine between November 1988 and February 1989. (Tr. Jordan at 10).

On several occasions, Jordan and Smith discussed "procuring cocaine." (Tr. Jordan at 11–12.) Smith testified that he initiated the contact at a time when he was looking for "a large portion of a kilo," and that he told Jordan that he had $17,000 to invest in "low cost, high quality" cocaine. (Tr. Smith II at 2–4.) Jordan contacted Peppy Cuerdas, who had a source in New York that would supply a kilo for $18,000. (Tr. Jordan at 13.) Jordan testified that Smith gave him $15,000, and that he borrowed the $3,000 balance from Brammer. (Tr. Jordan at 13–15.) Jordan and Cuerdas went to New York to get the cocaine (Tr. Jordan at 16), and when they returned, Jordan called Smith. Smith came over to Jordan's house, and they split the cocaine between them, with 24 ounces to

Smith and 10 ounces to Jordan.[2] (Tr. Jordan at 18).

In April 1989, Jordan approached Smith and wanted to buy some cocaine. Smith sold him four to six ounces of the cocaine that he had originally obtained in February from Jordan's trip to New York. (Tr. Smith at 4). Jordan corroborated this testimony, by stating that he bought four ounces of cocaine from Smith over a period of four weeks to two months in April or May. Jordan resold this cocaine at a profit to Randy Martin. (Tr. Jordan at 21). Later, Smith ran out of cocaine, so he went to Jordan and bought several eight-balls for personal use. (Tr. Smith at 4).

In June 1989, Jordan approached Smith about "going in" on ½ kilo of cocaine. (Tr. Jordan 22–24). Jordan testified that Smith said he only had $10,000, so Jordan borrowed $5,000 from Brammer. (Tr. Jordan at 25). Smith eventually agreed to contribute $10,000 for 11 ounces, but required Jordan to leave his diamond ring as collateral, in case Jordan was killed or arrested. (Tr. Jordan at 27; Tr. Smith at 5–7). Jordan traveled to New York, and was successful in obtaining the kilo of cocaine, but was arrested upon his return. (Tr. Jordan at 30–31.)

Following several days of trial, the jury returned a verdict of not guilty as to the four defendants who remained on trial. Subsequently, the government moved to dismiss the indictments against Ingino and Smith. The Court allowed dismissal of the indictment against Ingino on August 19, 1993. The government's motion to dismiss the indictment against Smith is presently before this Court. The reason offered by the United States Attorney for dismissal of the indictment is that since four co-defendants were acquitted by a jury, "fair and effective law enforcement" would be "best served by the dismissal of the charge against the defendant." (*See* United States' Order for Dismissal; *see also* Memorandum in Support at 7).

trial transcripts are available for the testimony of Walter Scamman Jordan, Curtis Bennett Terry, James Martin Brammer and Howard Kenneth Smith. The transcript for Smith is in two sections, I and II.

**2.** Smith testified that his share was 26 ounces and that Jordan's share was 9 ounces.

## II.

Dismissals of indictments are governed by Rule 48 of the Federal Rules of Criminal Procedure, which provides that "the United States Attorney may by leave of court file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant." Fed.R.Crim.P. 48(a). The United States Attorney has moved for dismissal in the present case, and Defendant has consented. The issue before the Court is the proper interpretation of "by leave of court" in the context of a Rule 48 dismissal.

■ It is well established that under Rule 48(a), the trial court has "little discretion" in considering the government's motion to dismiss, and "must grant the motion absent a finding of bad faith or disservice to the public interest." *United States v. Perate,* 719 F.2d 706, 710 (4th Cir.1983); *see also Rinaldi v. United States,* 434 U.S. 22, 30, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977). Although it is evident that Courts have "some discretion" under Rule 48(a), the Supreme Court has not delineated the circumstances under which the Court has discretion to deny leave. *Id.* at 29, n. 15, 98 S.Ct. at 85, n. 15. However, Courts are not merely a "rubber stamp" to the prosecutor's motion to dismiss. *United States v. Ammidown,* 497 F.2d 615, 622 (D.C.Cir.1973); *United States v. Abreu,* 747 F.Supp. 493, 505 (N.D.Ind.1990); *United States v. Freedberg,* 724 F.Supp. 851, 855 (D.Utah 1989).

The Supreme Court reviewed a trial court's refusal to allow the government to end a prosecution under Rule 48(a) in *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81. The defendant had been charged, tried, convicted, and sentenced in both state and federal courts for his involvement in a plan to rob hotel safe-deposit boxes. *Id.* at 23–24, 98 S.Ct. at 82. Once the conviction on the state charges was affirmed on appeal, the United States Attorney moved to dismiss the federal indictment, citing the *Petite* policy, which dictated that the Justice Department would refrain from prosecuting individuals in federal court for the same crime for which they were prosecuted in state court. The trial court denied leave to dismiss, citing the fact that the United States Attorney had improperly initiated the prosecution in violation of the *Petite* policy, and the Court of Appeals for the Fifth Circuit affirmed. *Id.* at 24–27, 98 S.Ct. at 82–84.

Reversing the lower court, the Supreme Court in a per curium opinion stated that the *Petite* policy serves the "important purpose of protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct." *Id.* at 27, 98 S.Ct. at 84. The Supreme Court agreed with the trial and appellate courts that the prosecutor's decision to initiate the suit was improper, but noted that the relevant inquiry is not the motive of the prosecutor when the suit was initiated; it is whether the prosecutor's decision to terminate was "tainted with impropriety." *Id.* at 30, 98 S.Ct. at 85. The Supreme Court found no bad faith by the Government in its effort to dismiss the indictment, and concluded that "[t]he decision to terminate this prosecution, based as it was on the *Petite* policy, was motivated by considerations which cannot fairly be characterized as 'clearly contrary to manifest public interest.'" *Id.* at 30, 98 S.Ct. at 85, *citing United States v. Cowan,* 524 F.2d 504, 513 (5th Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). Notably, the Supreme Court considered both the public interest at stake *and* the motivations of the prosecutor in seeking dismissal.

■ The result of the *Rinaldi* opinion is a two-part test for granting leave of court in a dismissal under Rule 48(a). First, the court should examine the motivation of the prosecutor in seeking a dismissal, and second, the court should make an objective determination of whether the reason offered by the prosecutor for dismissal serves the public interest.[3]

---

**3.** The Fifth Circuit has focused on only one part of this test, the motivation or "good faith" of the prosecutor. Thus, when the prosecutor acts in accordance with "his assessment of the public interest," the Court does not have discretion to disagree, *U.S. v. Hamm,* 659 F.2d 624 (5th Cir. 1981), and leave of court to dismiss can be withheld only if the dismissal is "tainted with

## III.

■ Leave of Court to dismiss is properly withheld when there is evidence of bad faith by the prosecutor. *See, e.g., United States v. Hayden,* 860 F.2d 1483 (9th Cir.1988) (bad faith found when prosecutor moved for dismissal to avoid Court's previous denial of prosecutor's motion to continue); *United States v. Derr,* 726 F.2d 617 (10th Cir.1984) (bad faith found when the prosecutor moves for dismissal because he is unprepared for trial); *United States v. Salinas,* 693 F.2d 348 (5th Cir.1982) (bad faith when prosecutor moves to dismiss after selecting a jury he perceives to be hostile to his case); *United States v. Hamm,* 659 F.2d 624, 630 (bad faith when prosecutor moves to dismiss because the prosecutor accepted a bribe, desires to attend a social event instead of the trial, or personally dislikes the victim of a crime). Since bad faith is not an issue in the present case, the Court will only address the second prong of the *Rinaldi* test and evaluate whether dismissal is "clearly contrary to manifest public interest."

*Rinaldi* specifically established that dismissals pursuant to an established Justice Department policy, the *Petite* policy against multiple prosecutions in state and federal court, were not "clearly contrary" to the public interest. *United States v. Rinaldi,* 434 U.S. at 31–32, 98 S.Ct. at 86. *Accord, United States v. Manbeck,* 744 F.2d 360, 372 (4th Cir.1984). In the present case, the Government has not identified an established Justice Department policy pursuant to which it is seeking dismissal.

■ The United States Attorney has cited *Cowan, Hamm,* and *Ammidown* in support of his motion to dismiss. Each of these cases involves a court's refusal to approve dismissals of charges in indictments as required by plea agreements. It is well established that plea bargaining serves important public interests because a plea agreement "tends to ensure some satisfaction of the public's interest in the prosecution of crime and confirms that the prosecutor's charges have a basis in fact" without the "expenditure of prosecutorial resources." *Town of Newton v. Rumery,* 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 1192 n. 3, 94 L.Ed.2d 405 (1987); *see also United States v. Navarro–Botello,* 912 F.2d 318, 321 (9th Cir.1990) (public policy strongly supports plea agreements); *United States v. Bushert,* 997 F.2d 1343, 1347 (11th Cir.1993) (plea bargains serve many significant and valid purposes). The interests of justice, standards of good faith, and fairness to the accused require the Government to keep the promises it makes in a plea agreement. *United States v. Hayes,* 946 F.2d 230, 234 (3rd Cir.1991); *United States v. Valencia,* 985 F.2d 758, 761 (5th Cir.1993); *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (when a plea rests in any significant degree on a promise of the prosecutor such promise must be fulfilled). Given the important public interest served by plea agreements, it is not surprising that a trial court's refusal to dismiss charges in an indictment pursuant to promises made by the government in a plea agreement have often been found to be an abuse of discretion. *See, e.g., Ammidown,* 497 F.2d 615 (reversing trial judge's refusal to dismiss charges of first-degree and felony murder and accept plea agreement in which defendant agreed to plead to second degree murder and testify against co-defendant after prosecutor offered "substantial" reasons for dismissing the charges); *Cowan,* 524 F.2d 505 (reversing trial judge's refusal to dismiss charges in indictment after prosecutor told the judge that defendant's testimony pursuant to a plea agreement was necessary to further a continuing investigation.)

Besides dismissals to uphold promises made in plea agreements, dismissal has been found to be in the public interest when important evidence has been lost and witness memories have faded, *United States v. Du-*

---

impropriety" by the improper motive or bad faith of the prosecutor. Courts in other jurisdictions have disagreed with such a narrow reading of the Court's role. *See United States v. Freedberg,* 724 F.Supp. 851, 855–56 (D.Utah 1989) (rejecting the Government's contention that the Court's discretion was so narrow that the Court could avoid dismissal "only to protect the defendant or avoid a tainted decision.") This Court declines to adopt the Fifth Circuit's approach, which restricts the Court's discretion to the subjective belief of the prosecutor, and instead will apply an objective test of the public interest.

*pris,* 664 F.2d 169, 171 (8th Cir.1981), or where, upon re-examining the evidence and discovering new facts, the prosecutor discovers that there is a substantial reasonable doubt as to the defendant's guilt, *United States v. Weber,* 721 F.2d 266 (9th Cir.1984). There has been no argument or assertion by the Government that evidence has been lost; and there has been no argument that there is substantial doubt as to the defendant's guilt. In fact, the testimony of Smith, corroborated by his co-defendants is substantial evidence of Smith's guilt.

The Fourth Circuit has held that a trial court may properly refuse to dismiss an indictment when there is substantial evidence of guilt. In *Perate,* the Fourth Circuit affirmed a trial court's refusal under Rule 48(a) to dismiss a count of an indictment which charged possession of cocaine, when the evidence indicated that at the time of arrest a large quantity of cocaine was seized from the defendant. *Perate,* 719 F.2d. at 710–11.

## IV.

■ In the present case, the reason for the dismissal offered by the United States Attorney is that "fair and effective law enforcement" would be "best served by the dismissal of the charge against the defendant," given that four of Smith's co-defendants were acquitted by the jury. This statement is conclusory, and reasons why the public's interest would be served by dismissal have not been identified except for the following statement.

The acquittal of the co-defendants who went to trial weighed heavily in the Government's decision in this matter. If it had not been for defendant Smith's last minute decision to enter a plea of guilty and cooperate with the Government, he certainly would have been acquitted along with the four other co-defendants. Since federal prosecutors have great latitude in making crucial decisions concerning enforcement of a nationwide system of criminal justice, they must be particularly sensitive to the need for consistency and unifor-

mity in the application of federal criminal laws. Considering the jury's acquittal of the four co-defendants and the cooperation of the defendant Smith to include his truthful testimony at trial, and the need to set a positive example for others who may decide to cooperate in the future, the Government decided that it would best serve the public interest to dismiss the indictment against the defendant Smith.

Government Brief at 7–8. Without doubt, actions promoting "consistency and uniformity in the application of federal criminal laws" are normally considered to be in the public interest. It is questionable whether that goal would be well served by allowing a dismissal in this case. If there is a recognized Justice Department policy to dismiss, after plea, charges against a testifying defendant when co-defendants are acquitted[4], it has not been followed in this district. If there is not such a recognized policy, a dismissal in this case would not be consistent with dispositions in other cases and would not promote uniformity. Dismissal of some testifying defendants in cases when acquittals result but not in other, similar cases would not be consistent.

Further, it does not appear, objectively, to be in the public's interest for a person who has testified as to his drug activity, admitted involvement in a conspiracy to procure drugs, and has been identified by Terry, Jordan, and co-defendant Brammer as having sold drugs should have his prosecution dismissed simply because the jury, for whatever reason it chose, determined to acquit other defendants.

"Consistency and uniformity in the application of federal criminal laws" appears better served by giving the same effect to a testifying defendant's plea agreement when co-defendants are found not guilty as when they are found guilty. This is not a case in which the Government agreed to dismiss charges in return for truthful cooperation but a case in which the parties formally agreed that truthful cooperation would result in a disposition under the federal sentencing guidelines with

---

**4.** Effective law enforcement may not be the result if testifying defendants understand that their ultimate best interest is better accomplished

through the acquittal of the persons against whom they have been called to testify rather than through providing truthful testimony.

a motion for a downward departure based upon Smith's providing truthful, substantial assistance. Despite the well recognized vagaries of jury verdicts, the plea agreement here makes no exception for co-defendant acquittals.

## V.

Smith's guilty plea and subsequent trial testimony, corroborated by the testimony of others, is substantial evidence that he is guilty of the crime charged in the indictment. Under these facts, the Court finds that dismissal of the grand jury indictment against Smith would be clearly contrary to manifest public interest. Thus, permission to dismiss the indictment against Howard Kenneth Smith, Jr., is DENIED.